UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL A. GERONIMO,                  )
                          Plaintiff,  )
                                     )
       v.                            )        Civ. No. 05-1057 (JDB)
                                     )
UNITED STATES DEPARTMENT OF          )
       JUSTICE, et al.,              )
                          Defendant.  )
_____ _____)

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, through its undersigned attorneys, respectfully moves this Court for summary

judgment on behalf of the Executive Office of United States Attorneys ("EOUSA"), Department

of Justice, ("DOJ") on the grounds that there are no material facts in dispute and the EOUSA is

entitled to judgment in its favor as a matter of law.  Fed. R. Civ. P. 56.  In support of this motion

are Defendant's Memorandum of Points and Authorities, Statement of Facts Not In Dispute and

the attached declaration of John F. Boseker,  Attorney Advisor, in EOUSA which describes the

EOUSA's response to plaintiff's FOIA request, and the declaration of Maryellen Barrett, Grand

Jury Coordinator/Freedom of Information Act ("FOIA") contact person for the Criminal Division,

United States Attorney's Office ("USAO") for the District of Massachusetts.

Plaintiff should take notice that any factual assertions contained in the accompanying

affidavit and other attachments in support of defendant's motion will be accepted by the Court as

true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the

assertions in defendant's attachments.  *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local

Rule 7.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal
> knowledge, shall set forth such facts as would be admissible in
> evidence, and shall show affirmatively that the affiant is competent

to testify to the matters stated therein.  Sworn or certified copies of
all papers or parts thereof referred to in an affidavit shall be attached
thereto or served therewith.  The court may permit affidavits to be
supplemented or opposed by depositions, answers to interrogatories,
or further affidavits.  When a motion for summary judgment is
made and supported as provided in this rule, an adverse party may
not rest upon the mere allegations or denials of the adverse party's
pleading, but the adverse party's response, by affidavits or as
otherwise provided in this rule, must set forth specific facts showing
that there is a genuine issue for trial.  If the adverse party does not
so respond, summary judgment, if appropriate, shall be entered
against the adverse party.

Fed. R. Civ. P. 56(e).

Therefore, because the agency identified here has complied with all FOIA requirements,

the complaint with regard to this agency should be dismissed.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


MANUEL A. GERONIMO,                )
                    Plaintiff,     )
                                   )
        v.                         )        Civ. No. 05-1057 (JDB)
                                   )
UNITED STATES DEPARTMENT OF        )
        JUSTICE, et al.,           )
                    Defendant.     )
_____ _____)


## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Defendant submits this statement of material facts as to which there is no genuine dispute

in accordance with Local Rule 7.1(h).

1.  On February 12, 2003,  EOUSA received a letter dated February 3, 2003, from

plaintiff  inquiring about a FOIA request plaintiff asserted that he had previously sent to EOUSA

dated November 13, 2002**.**  (EOUSA was unable to verify receipt of the earlier November 2002

letter.)   The attached document dated November 13, 2002 requested:

> My case agent's entire file pertaining either directly or indirectly to me.  My
> criminal case entitled U.S. v. Manuel Geronimo #1:00Cr10013-001 out of the
> districts of Massachusetts, and everything else on me including all lab reports.

 Boseker Dec. at ¶ 6 and Ex A.

2.  On or about December 29, 2004, the FOIA contact for the United States Attorney's

Office in the District of Massachusetts had the USAO  docketing people look up Manuel A.

Geronimo in their LIONS system.  Barrett Dec. at ¶5.  There was one box in docketing which

consisted of trial transcripts, appeal transcripts and appeal materials.

3.  On or about January 3, 2005, EOUSA was notified by the FOIA contact for the

U.S. Attorneys Office for the District of Massachusetts ("USAO/DMA") that the only records located were public records: approximately 1500 pages of trial transcripts, 1000 pages of appeal transcripts, and 1000 pages of appeal materials. Boseker Dec. at ¶13.

4.  By letter dated January 31, 2005, EOUSA notified Mr. Geronimo that  USAO "District of **Maine**" *(emphasis added)* had located no responsive records.  The letter advised him of his right to appeal this determination to the OIP within 60 days of the date of this letter. *Id.* at Exhibit H attached.  (It should be noted that the reference to the USAO/DME was a typographical error, and that the top of the letter states "Subject:Self/DMA", indicating the USAO/DMA. [District of Massachusetts]) *Id.* at ¶14

5.  By letter dated February 14, 2005, Mr. Geronimo responded that he was confused by the EOUSA letter because he had never requested any records located in Maine, but that his request concerned records located in the District of Massachusetts under . . .Criminal No. 00-10013.. *Id.* at ¶ 15 and Exhibit I .

6.  By letter dated June 28, 2005, EOUSA sent a "corrected" response to its letter of January 31, 2005 (Exhibit H), indicating that a search had been performed by the U.S. Attorneys Office for the District of Massachusetts, and that the USAO had "revealed no records responsive to your request for your 'case agent's entire file pertaining either directly or indirectly to me." *Id.* at Ex. J.  The June 28, 2005 communication also added as a note that the USAO had located approximately 3500 pages of public records – trial transcript, appeal transcripts and other appeal material-- which were available to him at a cost of ten cents per page after the first 100 pages (which were free).  These records could be obtained by writing to EOUSA and specifically asking for them. *Id.* at ¶17 and Ex J.

7.  Mr. Geronimo has not made any written request for the public records described in the

June 28, 2005 letter.  *Id* at ¶18.

8.  On or about August 1, 2005 the FOIA contact at the USAO in Massachusetts conducted another search by inquiring whether the AUSAs had the requested materials, and another box was found.  Barrett Dec. at ¶10.

9.  On September 2, 2005 all documents in the two boxes pertaining to Manual A. Geronimo were FedExed to EOUSA.  Barrett Dec. at ¶¶11-12 and Boseker Dec. at ¶19.

10.  By letter dated September 26, 2005,  EOUSA notified Mr. Geronimo that it had processed the materials located in response to his request. Enclosed with this letter were 12 pages released in their entirety and 12 pages containing redactions.  In addition, Mr. Geronimo was advised that 414 pages were being withheld in their entirety (as well as 66 pages of grand jury material), which had been reviewed for segregability, and that access to his PSR could be obtained through contacting the U.S. Bureau of Prisons directly.  EOUSA further advised him that it had applied the following exemptions to material withheld in whole or part: 5 U.S.C. § 552(b)(3) in conjunction with Federal Rule of Criminal Procedure 6(e)(grand jury); (b)(5), (b)(7)(C),and 5 U.S.C. §552a(j)(2). (EOUSA omitted exemption (b)(2), which was applied to one document.)  In addition, EOUSA notified Mr. Geronimo that it had referred 669 pages of material to U.S. Customs, 140 pages to DEA, as these records had originated with those government components. These components were to review, make a determination regarding exemptions, and provide Mr.

Geronimo with a direct response.  Again, Mr. Geronimo was advised that public records were available upon request, subject to a copying fee. Boseker Dec at ¶20 and Exhibit L. [1]

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

---

[1]  Defendant has received a return receipt signed by M. Johnson on 10/4/05 for the FOIA package sent to Mr. Geronimo.  See Exhibit M.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL A. GERONIMO,       )
                 Plaintiff,    )
                           )
       v.              )     Civ. No. 05-1057 (JDB)
                           )
UNITED STATES DEPARTMENT OF  )
     JUSTICE, et al.,        )
                  Defendant.   )
_____ _____)

## MEMORANDUM IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and

pertains to the processing of plaintiff's FOIA request by the Executive Office Of United States

Attorneys ("EOUSA"), U.S. Department of Justice ("DOJ").  The attached declarations of  John

F. Boseker,  Attorney Advisor, in EOUSA , DOJ, and  MaryEllen Barrett, Grand Jury

Coordinator/Freedom of Information Act ("FOIA") contact person for the Criminal Division,

United States Attorney's Office ("USAO") for the District of Massachusetts, describe the

EOUSA's response to plaintiff's FOIA request.

### Factual and Procedural Background

On February 12, 2003,  EOUSA received a letter dated February 3, 2003, from

plaintiff  inquiring about a FOIA request plaintiff asserted that he had previously sent to EOUSA

dated November 13, 2002**.**  (EOUSA was unable to verify receipt of the earlier November 2002

letter.)   The attached document dated November 13, 2002 requested:

My case agent's entire file pertaining either directly or indirectly to me.  My
criminal case entitled U.S. v. Manuel Geronimo #1:00Cr10013-001 out of the
districts of Massachusetts, and everything else on me including all lab reports.

Boseker Dec. at ¶ 6 and Ex A.

By letter dated February 24, 2003, EOUSA responded to Mr. Geronimo by advising him that he needed to provide EOUSA with a certification of his identity, by one or more means described, and enclosed a form to assist him in complying with that requirement. In relevant part, the letter notified him that it had assigned his letter FOIA No. 03-431, and that this was the final determination by EOUSA regarding his letter.  He was provided notification that he could appeal this determination to the Office of Information and Privacy within 60 days of EOUSA's letter, and given the address to which he could send the appeal.  *Id.* at ¶ 7.

By letter dated March 3, 2003, received by EOUSA March 11, 2003, Mr. Geronimo resubmitted his request for the records.  Mr. Geronimo enclosed the completed certification of identity form with  this letter.  *Id.* at ¶8.

By letter dated April 15, 2003, EOUSA notified Mr. Geronimo that it had received his certification of identity and assigned his request FOIA No. 03-1038.  He was advised that if his request constituted a very large request (i.e., a "Project Request" included a request for "all information about myself in criminal case files"), that the time it would take EOUSA to respond could be up to nine months.  He was given the option to narrow his request for more specific records or 'we will consider that you have agreed to a due date of nine months from the date of this letter."  *Id.* at ¶ 9 and Ex. D.

On June 4, 2003, EOUSA received a letter dated May 28, 2003, from Mr. Geronimo in which he indicated that he felt he had exhausted his administrative remedies, and stated he gave the agency 30 days to fulfill or deny the request, or he would file a "mandamus" action in District Court.  *Id.* at ¶ 10 and Ex. E.  He did not, however, narrow his request.  *Id.*

By letter dated June 25, 2003, EOUSA notified Mr. Geronimo that it had received

his correspondence, that there was a delay in processing his request, and that EOUSA had adopted a "first-in-first-out" processing policy pursuant to *Open America v. Watergate Special Prosecution Force. Id.* at ¶ 11 and Ex. F. This letter stated that plaintiff "may appeal my decision in this matter by writing within sixty days (60)" to the reflected address. It also stated that the envelope and letter of appeal "must be clearly marked "Freedom of Information Act/ Act Appeal." *Id.*

By letter dated August 14, 2003 and received on August 20, 2003, plaintiff formally appealed " EOUSA's denial of my initial FOIA request." Id. at Ex. K

By letter dated September 15, 2003, the DOJ Office of Information and Privacy(OIP) advised plaintiff that EOUSA was still processing his request, and OIP could not act until there had been a denial of access to him. The letter also stated "In the event that EOUSA still has not responded to your request at the time you receive this letter, you may, if you choose, treat my letter as a denial of your appeal and bring action in an appropriate federal court." *Id.* at Ex. K.

By letter dated November 21, 2004, Mr. Geronimo asked that EOUSA send him copies of papers already sent to him, because they had been lost by BOP officials. He also inquired about the status and progress of the FOIA request. *Id.* at ¶12 and Exhibit G**.**

On or about January 3, 2005, EOUSA was notified by the FOIA contact for the U.S. Attorneys Office for the District of Massachusetts ("USAO/DMA") that the only records located were public records: approximately 1500 pages of trial transcripts, 1000 pages of appeal transcripts, and 1000 pages of appeal materials. *Id.* at ¶13,

By letter dated January 31, 2005, EOUSA notified Mr. Geronimo that USAO "District of **Maine***" (emphasis added)* had located no responsive records. The letter advised him of his right to appeal this determination to the OIP within 60 days of the date of this letter. *Id.* at Exhibit H

attached.  (It should be noted that the reference to the USAO/DME was a typographical error, and that the top of the letter states "Subject:Self/DMA", indicating the USAO/DMA. [District of Massachusetts]) *Id.* at ¶14

By letter dated February 14, 2005, Mr. Geronimo responded that he was confused by the EOUSA letter because he had never requested any records located in Maine, but that his request concerned records located in the District of Massachusetts under . . .Criminal No. 00-10013.. *Id.* at ¶ 15 and Exhibit I .

The above-captioned action was filed May 26, 2005, and served on EOUSA on or about June 7, 2005.  *Id.* at ¶16.

By letter dated June 28, 2005, EOUSA sent a "corrected" response to its letter of January 31, 2005 (Exhibit H), indicating that a search had been performed by the U.S. Attorneys Office for the District of Massachusetts, and that the USAO had "revealed no records responsive to your request for your 'case agent's entire file pertaining either directly or indirectly to me." *Id.* at Ex. J.  The June 28, 2005 communication also added as a note: that the USAO had located approximately 3500 pages of public records – trial transcript, appeal transcripts and other appeal material-- which were available to him at a cost of ten cents per page after the first 100 pages (which were free).  These records could be obtained by writing to EOUSA and specifically asking for them. *Id.* at ¶17 and Ex J.

To date, Mr. Geronimo has not made any written request for the public records described in the June 28, 2005 letter, nor does it appear that any administrative appeal was made of the EOUSA determination letter of January 31, 2005 (Exhibit H).

Subsequently, EOUSA was notified by the FOIA contact for the USAO/DMA, Mary Ellen Barrett, that its continued search for Mr. Geronimo's records had located another box

4

of documents.  These records were copied and forwarded to EOUSA for its review and

determinations regarding the applicability of exemptions thereto.  Boseker Dec at ¶19.

By letter dated September 26, 2005,  EOUSA notified Mr. Geronimo that it had

processed the materials located in response to his request. Enclosed with this letter were 12 pages

released in their entirety and 12 pages containing redactions.  In addition, Mr. Geronimo was

advised that 414 pages were being withheld in their entirety (as well as 66 pages of grand jury

material), which had been reviewed for segregability, and that access to his PSR could be obtained

through contacting the U.S. Bureau of Prisons directly.  EOUSA further advised him that it had

applied the following exemptions to material withheld in whole or part: 5 U.S.C. § 552(b)(3) in

conjunction with Federal Rule of Criminal Procedure 6(e)(grand jury); (b)(5), (b)(7)(C),and 5

U.S.C. §552a(j)(2). (EOUSA omitted exemption (b)(2), which was applied to one document.)  In

addition, EOUSA notified Mr. Geronimo that it had referred 669 pages of material to U.S.

Customs, 140 pages to DEA, as these records had originated with those government components.

These components were to review, make a determination regarding exemptions, and provide Mr.

Geronimo with a direct response.  Again, Mr. Geronimo was advised that public records were

available upon request, subject to a copying fee. *Id* at ¶20 and Exhibit L. [2]

Since other agency documents were identified and forwarded to those agencies, the Court

has allowed defendant to bifurcate its response by submitting EOUSA's response separately from

those of the Customs and DEA.

## II.     STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where

---

[2]  Defendant has received a return receipt signed by M. Johnson on 10/4/05 for the FOIA
package sent to Mr. Geronimo.  See Exhibit M.

"there is no genuine issue as to any material fact and . . .the moving party is entitled to judgment as a matter of law." *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show, if applicable, that the documents are exempt from disclosure. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'" *Public Citizen, Inc. v. Dept. of State*, 100 F.Supp.2d 10, 16 (D.D.C. 2000)(reversed in part on different issue by 276 F.3d 634 (D.C.Cir.2000) (quoting *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

Specifically, summary judgment is available to a defendant agency upon proof that it has fully discharged its obligations under FOIA. *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985.) The declarations and accompanying Vaughn Index in this matter were provided by individuals familiar with the steps taken by defendant in responding to Plaintiff's FOIA request. Since they demonstrate that the defendant met its obligations under the FOIA, and the pleadings and other filings show no genuine issue as to any material fact and EOUSA is entitled to

judgment as a matter of law, summary judgment should be granted to EOUSA.

### III.  ARGUMENT

**A.    EOUSA'S Search Was Adequate**.

In responding to a FOIA request, an agency is under a duty to conduct a reasonable search for responsive records. *Oglesby v. U.S. Dept. of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990); *Judicial Watch, Inc. v. U.S. Dept. of Commerce*, 337 F.Supp.2d 146, 158 (D.D.C. 2004); *Allen v. U.S. Secret Service*, 335 F.Supp.2d 95, 97 (D.D.C. 2004); *Cleary, Gottlieb, Steen & Hamilton v. Dept. of Health*, 844 F. Supp. 770, 776 (D.D.C. 1993); *Weisberg v. U.S. Dept. of Justice*, 705 F.2d 1344, 1352 (D.C. Cir. 1983).   The adequacy of a search is necessarily "'dependent upon the circumstances of the case.'"  *Kronberg v. Department of Justice*, 875 F. Supp. 861, 869 (D.D.C. 1995) (quoting *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)); *see also Judicial Watch, Inc.*, 337 F.Supp.2d at 158.  "[A] search need not be perfect, only adequate, and adequacy is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

Indeed, an agency is not required to search every record system, but need only search those systems in which it believes responsive records are likely to be located.  *Oglesby*, 920 F.2d at 68. Additionally, the search standards under the FOIA do not place upon the agency a requirement that it prove that all responsive documents have been located.  *Nation Magazine v. U.S. Customs Serv.*, 71 F.3d 885, 892 n.7 (D.C. Cir. 1995).  Even when a requested document indisputably exists or once existed, summary judgment will not be defeated by an unsuccessful search for the document so long as the search was diligent.  *Id.*; *see also Allen*, 335 F.Supp.2d at 99-100 (mere fact that plaintiff discovered one document from a third source that possibly should have been uncovered by the defendant agency "does not render the search process unreasonable.")

Additionally, the mere fact that a document once existed does not mean that it now exists; nor does the fact that an agency created a document necessarily imply that the agency has retained it. *Maynard v. CIA*, 982 F.2d 546, 564 (1st Cir. 1993).

The burden rests with the agency to establish that it has "made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. "An agency may prove the reasonableness of its search through affidavits of responsible agency officials so long as the affidavits are relatively detailed, non-conclusory and submitted in good faith." *Miller*, 779 F.2d at 1383; *Goland v. Central Intelligence Agency*, 607 F.2d 339, 352 (D.C. Cir. 1987), *cert. denied*, 445 U.S. 927 (1980). Once the agency has proffered such evidence, i.e., a legally-sufficient affidavit, the burden then shifts to the requester to rebut the evidence by a showing of bad faith on the part of the agency. *Miller*, 779 F.2d at 1383. It is insufficient, however, for a requester to attempt to rebut the agency affidavit with purely speculative claims. *See Carney v. U.S. Department of Justice*, 19 F.3d 807, 813 (1st Cir. 1994); *SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991).

The Boseker and Barrett declarations and the Vaughn Index demonstrate through detailed, non-conclusory averments that, in this case, the defendant engaged in a "good faith effort to conduct a search for the requested records, using methods which [were] reasonably expected to produce the information requested." *Oglesby*, 920 F. 2d at 68. Specifically, in the instant matter the FOIA request was referred to the office which conducted the prosecution of Mr. Geronimo, United States Attorney's Office for the District of Massachusetts. Barrett Dec at ¶¶3, 4. The FOIA coordinator had docketing look up Manuel A. Geronimo using their LIONS system. Barrett Dec at ¶5. LIONS is the computer case tracking system used by the USAO. LIONS has fields for

retrieval of information based on the defendant's name, USAO file jacket number and district

court case number. Boseker Dec. at ¶22.   Docketing had one box of documents pertaining to

plaintiff. Barrett Dec. at ¶5.  A further search was conducted by inquiring whether the AUSAs

had the requested materials, and another box was found.  Barrett Dec. at ¶¶9and 10.  Copies of all

the documents in both boxes were sent to EOUSA.  Barrett Dec. at ¶¶11, 12.  All documents

pertaining to plaintiff's case should have been maintained by docketing and/or by the AUSAs

assigned to the case.  Barrett Dec. at ¶13.  Each responsive document was reviewed at EOUSA to

determine what information cold be segregated and released.  Boseker Dec. at ¶41.  Because the

FOIA coordinator at the USAO in Massachusetts conducted a search where responsive documents

were likely to be found, the search was adequate and consistent with the case law of this

jurisdiction.

### B    EOUSA Properly Applied Privacy Act Exemption (j)(2)

The EOUSA properly determined that the criminal case file, *U.S. v. Geronimo*,  number

1:00CR10013-001,  was exempt from the Privacy Act's disclosure provisions.  Subsection (j)(2)

of the Privacy Act allows an agency by regulation to exempt from mandatory disclosure any

system of records:

> maintained by an agency or component thereof which performs as its principal function
> any activity pertaining to the enforcement of criminal laws, including . . . the activities of
> prosecutors, courts, correctional, probation, pardon, or parole authorities, and which
> consists of (A) information compiled for the purpose of identifying individual criminal
> offenders and alleged offenders and consisting only of identifying data and notations of
> arrests, the nature and disposition of criminal charges, sentencing, confinement, release,
> and parole and probation status; (B) information compiled for the purpose of a criminal
> investigation, including reports of informants and investigators, and associated with an
> identifiable individual; or (C) reports identifiable to an individual compiled at any stage of
> the process of enforcement of the criminal laws from arrest or indictment through release
> from supervision.

5 U.S.C. § 552a(j)(2).   In accordance with this provision, the Attorney General has exempted the

9

Criminal Case Files from disclosure under the Privacy Act.  28 CFR 16.81(a)(4).  Criminal Case file *U.S. v. Geronimo*, 1:00CR10013-001 is maintained in the Criminal Case File system, Boseker Dec. at ¶ 21, and therefore is exempt from disclosure under 5 U.S.C. § 552a(j)(2).

### C.    EOUSA Properly Applied FOIA Exemptions.

### Exemption (b)(2)

Pursuant to 5 U.S.C. § 552(b)(2) (" Exemption 2"), the Government is not required to disclose records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to ... a genuine and significant public interest" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  *Dept. of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *Schiller v. National Labor Relations Board*, 964 F.2d 1205, 1207 (D.C. Cir. 1992); *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981); *Dorsett v. U.S. Dept. of Treasury*, 307 F.Supp.2d 28, 35-36 (D.D.C. 2004); *Edmonds v. F.B.I.*, 272 F.Supp.2d 35, 50 (D.D.C. 2003).

Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."  *Schiller*, 964 F.2d at 1207. "Low (b)(2)" information refers to internal procedures and practices of an agency, where disclosure would constitute an administrative burden unjustified by any genuine and significant public benefit.  *Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982); *see also Schiller*, 964 F.2d at 1207.  "Low (b)(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice.  *See Schwaner v.*

*Dept. of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990); *Voinche v. Federal Bureau of Investigation*, 46 F.Supp.2d 26, 30 (D.D.C. 1999).

Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and other like administrative markings are exempt from disclosure. *Coleman v. F.B.I.*, 13 F.Supp.2d 75, 78-79 (D.D.C. 1998), *citing, Lesar v. Dept. of Justice*, 636 F.2d 472 (D.C. Cir. 1980); *see also Schiller*, 964 F.2d at 1208 (protecting from disclosure internal agency time deadlines and procedures, recordkeeping directions, instructions on which agency official to contact for assistance, and guidelines on clearance procedures); *Nix v. United States*, 572 F.2d 998, 1005 (4th Cir. 1978)(protecting cover letters of merely internal significance); *Scherer v. Kelley*, 584 F.2d 170, 175-78 (7th Cir. 1978)(protecting "file numbers, initials, signature and mail routing stamps, references to interagency transfers, and data processing references"); *Voinche*, 46 F.Supp.2d at 30 (protecting the file number for an informant and telephone extension of the Public Corruption Unit of the FBI's Criminal Investigation Unit); *Wilson v. Dep't of Justice*, No. 87-2415-LFO, 1991 WL 111457, at *2 (D.D.C. June 13, 1991)(protecting transmittal slips from low level officials). The notion behind this reasoning is that administrative agencies should not be burdened by responding to requests for trivial information unlikely to be the subject of public interest. *Martin*, 686 F.2d at 34.

Here, Exemption 2 (i.e., "low 2") was properly applied to a one-page USAO Appeal Documentation Sheet, an internal Opening/Closing form prepared by an AUSA to report appeal opening and closing to his superiors. Vaughn Document # 4. The public has little or no interest in this type of administrative information.

**Exemption (b)(3)**

FOIA Exemption (b)(3) permits the withholding of information that is "specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute . . . requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue. . . ."  Fed. R. Crim. P. 6(e) is such a statute, prohibiting an attorney for the government from disclosing "matters occurring before the grand jury."  Sixty-six pages of grand jury transcripts were withheld by EOUSA under Exemption (b)(3).  Vaughn Document 13.  Also withheld was a summary of grand jury testimony.  Vaughn document 12.  Our Court of Appeals has held that grand jury transcripts are protected from disclosure by Exemption (b)(3).  *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 869 (D.C. Cir. 1980).

**Exemption (b)(5)**

Exemption 5 protects from disclosure inter- and intra-agency communications that are covered by a traditional civil discovery privilege.  *See, e.g. Rockwell Internat'l Corp. v. Department of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C. Cir. 1987).  Further, it does so without regard to the needs of a particular plaintiff.  *Id*. at 1184.

Here, certain documents are protected by the attorney work product and deliberative process privileges.

### The Attorney Work Product and Deliberative Process Privileges

The attorney work-product privilege protects "the files and the mental impressions of an attorney... reflected, of course, in interviews, statements, memoranda, correspondence, briefs ...

and countless other tangible and intangible ways prepared in anticipation of litigation,"
particularly those documents which set forth the attorney's theory of the case and litigation
strategy. *A. Michael's Piano, Inc. v. Federal Trade Comm'n*, 18 F.3d 138, 146 (2d Cir. 1994)
(*citing Hickman v. Taylor*, 329 U.S. 495, 509-11 (1947)).

 To qualify for the protection a document must have been created by or at the direction of
an attorney in anticipation of litigation. The litigation which is anticipated need not be imminent,
as long as the motivating factor behind the creation of the document was to aid in possible future
litigation. *U.S. v. Davis*, 636 F. 2d 1028, 1040 (5th Cir. 1981); *A. Michael's Piano*, 18 F.3d. at
146; *Hickman,* 329 U.S. at 511.

 The protection of Exemption 5 as to the attorney-client and work-product privileges are
not limited to civil litigation. Rather courts have either explicitly or implicitly recognized that the
work-product doctrine is applicable to criminal prosecutions when the courts have upheld the
nondisclosure of documents prepared in the context of a criminal investigation/prosecution
pursuant to the (b)(5) Exemption. *See Harvey v. U.S. Dept. of Justice*, 747 F. Supp. 29,37 (D.D.C.
1990); *Dunham v. U.S. Dept. of Justice*, 829 F.Supp. 428, 433 (D.D.C. 1993); *Jimenez v. FBI*, 938
F.Supp. 21, 28, (D.D.C. 1996).

 The  deliberative process privilege protects predecisional and deliberative
communications, shielding from disclosure "the deliberative process that precedes most decisions
of government agencies." *Russell v. Department of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir.
1982).  For the privilege to apply, however, the communication must be both predecisional, i.e.,
"antecedent to the adoption of an agency policy," *Jordon v. Department of Justice*, 591 F.2d 753,
774 (D.C. Cir. 1978)(en banc), overruled in part on other grounds, *Crooker v. Bureau of Alcohol,
Tobacco, and Firearms*, 620 F.2d 1051 (D.C. Cir. 1981)(en banc), and deliberative "in that it

makes recommendations or expresses opinions on legal and policy matters," *Vaughn v. Rosen*, 523 F.2d 1136, 1143-144 (D.C. Cir. 1975). "[T]he exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell*, 682 F.2d at 1048.

There are essentially three policy bases for this privilege. First, it protects creative debate and candid considerations of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Jordan*, 591 F.2d at 772-73 (citation omitted).

Thus, the exemption "guard[s] against disclosure of documents that suggest 'as agency position that which is as yet only personal position.'" *Russell*, 682 F.2d at 1048 *(quoting Coastal States Gas Corp.*, 617 F.2d 854, 866 (D.C. Cir. 1980)). In addition, when evaluating a claim of deliberative process privilege, courts must defer to the agency's explanation of its decisional process, given the agency's expertise in determining "what confidentiality is needed 'to prevent injury to the quality of agency decisions.'" *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989), *quoting Chemical Mfgrs. Ass'n v. CPSC*, 600 F. Supp. 114, 118 (D.D.C. 1984). The critical factor "is whether disclosure of the information would 'discourage candid discussion within the agency.'" *Access Reports v. Department of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991), *quoting Dudman Communications Corp. v. Department of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir. 1987).

Exemption 5 was applied to:

Vaughn Document #1, 332 pages of AUSA legal research comprised of copies of published
    court decisions, many containing highlights and hand written notations of thoughts on the
    application of case law to the prosecution of Geronimo, ultimately used in aspects of the
    criminal case.  (Withheld in full.)

Vaughn document # 2, a one page intra-agency memorandum of legal research made at the
    direction of an AUSA in the course of the prosecution regarding legal issues and case law.
    (Withheld in full.)

Vaughn document # 3, 20 pages of AUSA handwritten notes made during the course of the
    criminal prosecution, containing legal analysis, mental impressions, thoughts, opinions,
    and things to do in various phases of the prosecution.  (Withheld in full.)

Vaughn document # 4, a one page USAO Appeal Documentation Sheet in which an AUSA
    reports to superior AUSAs and others in anticipation of litigation.  (Withheld in full in
    conjunction with exemption (b)(2).)

Vaughn document # 9, a one-page memorandum from the Solicitor General to the Assistant
    Attorney General, Criminal Division.  Withheld were two lines discussing instructions to
    be followed in connection with an aspect of responding to the criminal appeal.

The exemption also should be applied to Vaughn document # 5 to the extent that it contains
attorney work product and discloses AUSA deliberative process in AUSA memoranda and pre-
trial notes.

    The attorney work product and deliberative process privileges clearly apply to the withheld
items.

**Exemption (b)(7)**

Exemption 7 of the FOIA protects from disclosure "records or information compiled for

law enforcement purposes" under certain circumstances.  5 U.S.C. § 552(b)(7).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997) (*citing Pratt v. Webster*, 673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  *Keys v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'"  *Keys,* 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The files created and maintained by the USAO are directly related to its purpose of the criminal prosecution of plaintiff.  Boseker Dec. at ¶34.

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. ' 552(b)(7)(C).  "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope."  *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing *Pratt*, 673 F.2d at 420 n.32).  When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt, 673 F.2d at 418*).  A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement

duties" is "'based on information sufficient to support at least "a colorable claim" of its

rationality.'" *Key*s, 830 F.2d at 340, (quoting Pratt, 673 F.2d at 421).

Once the agency has demonstrated that the records were compiled for law enforcement

purposes, the Court must next consider whether the release of information withheld "could

reasonably be expected to constitute an unwarranted invasion of personal privacy."  This

determination necessitates a balancing of the individual's right to privacy against the public's right

of access to information in government files.  *See, e.g., Reporters Comm.*, 489 U.S. at 776-780.

The Supreme Court has made clear that "whether disclosure of a private document under

Exemption 7(C) is warranted must turn on the nature of the requested document and its

relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the

light of public scrutiny,' *Dep't of Air Force v. Rose*, 425 U.S. at 372, rather than on the particular

purpose for which the document is being requested." *Reporter's Comm.*, 489 U.S. at 772 (internal

quotation marks omitted).  Information that does not directly reveal the operations or activities of

the government "falls outside the ambit of the public interest that the FOIA was enacted to serve."

*Id.* at 775.  The plaintiff bears the burden of establishing that the "public interest in disclosure is

both significant and compelling in order to overcome legitimate privacy interests." *Perrone v.*

*FBI*, 908 F.Supp. 24, 27 (D.D.C. 1995) *(citing Senate of Puerto Rico v. U.S. Dep't of Justice*, 823

F.2d 574, 588 (D.C. Cir. 1987)).  Significantly, it is the "interest of the general public, and not that

of the private litigant" that matters. *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only

public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to

be informed about what their government is up to.'" *Davis v. Dep't of Justice,* 968 F.2d 1276,

1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773) (internal quotation marks

omitted).

The privacy interests of third parties mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial."  *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir. 1991).  Our Court of Appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Services*, 926 F.2d at 1206.

Here, the information withheld under Exemption C was " compiled for law enforcement purposes in order to prosecute Mr. Geronimo."  Boseker Dec. at ¶34.  As such, it meets the Exemption C threshold requirement of being compiled for law enforcement purposes.

In addition, the agency reasonably relied on Exemption C to justify withholding the two types of information withheld under this Exemption.  Release of the first group of information withheld -- names of federal agents who participated in the investigation and prosecution of this case.-- could reasonably be expected to constitute an unwarranted invasion of personal privacy. The names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C).  *Davis,* 968 F.2d at 1281; *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487-488 (D.C. Cir. 1980).  If the information were released, law enforcement personnel could be subjected to harassment or other harm.  These persons have protected privacy interests in the conduct of law enforcement investigations.  Boseker Dec at ¶37. By contrast, the public interest in disclosure of names of Special Agents is slight.  *Id.* The names of the federal agents will not "shed[] light on [the] agency's performance of its statutory duties." *Reporters Comm.*, 489 U.S. at 772, as contemplated by the FOIA. In fact, the public has an interest in non-disclosure of this information  as disclosure may diminish the ability of law

enforcement personnel to perform their duties. *Id.*

The second group of information withheld pertains to the names, files and personal information of other third parties. Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. *Reporters Comm.*, 489 U.S. at 780; *Farese v. U.S. Dep't of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987) (individuals who provide information to law enforcement authorities, have protectable privacy interests in their anonymity). See also *Computer Prof'ls*, 72 F.3d 897, 904 D.C. Cir 1996); *Farese v. U.S. Dept. of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests. *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990); *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984) As the agency reasoned: "Release of the identifying information could result in unwanted and even unlawful efforts to gain further access to such persons or to personal information about them. It could also lead to harassment, harm, or exposure to unwanted and/or derogatory publicity and inferences arising from their connection to the case." Boseker Dec. at ¶36. Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. *Reporters Comm.*, 489 U.S. at 780; *Nation Magazine v. U.S. Customs Service,* 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); *SafeCard Services*, 926 F.2d at 1206. Moreover, "the disclosure of third party information might have the effect of chilling future cooperation by third parties with law enforcement.

In this case, the exemption was applied to the names of government personnel and third parties as follows:

19

Vaughn Document 3, exemption applied to third party names and personal information in AUSA
notes.

Vaughn Document 5, 60 pages withheld in full.  These are records pertaining entirely to third
party individuals, who have not provided consent/authorization for disclosure.  The
documents include presentence reports, file covers, photos of evidence used against the
persons, pre-trial notes, AUSA memoranda.  *See also* Boseker  Dec at ¶¶39,40.

Vaughn Document 6, exemption applied to names and personal information concerning third
party individuals in a 2-page letter.

Vaughn Document 7, exemption applied to names of federal agents in a 1-page letter.

Vaughn Document 8, exemption applied to names of federal agents and third party individuals in
a 2-page letter.

Vaughn Document, 10, exemption applied to telephone number of sender of memorandum.

Vaughn Document 11, exemption applied to third party names and personal information in a 2-
page letter

Vaughn Document 12, exemption applied to third party names and personal identifiers in a 3-page
letter,

Vaughn Document13,  exemption applied to third party name and personal information in grand
jury transcripts.

Releasing the names of these individuals would constitute an unwarranted invasion of
privacy.  Further, in each instance, it was determined that there was no public interest in the
release of the information because "its dissemination would not help to explain the activities and
operations of the EOUSA.  A prisoner's personal interest in the information, such as to challenge
his conviction is not a FOIA-recognized interest that should be weighed against the individual's

privacy interest.  Thus, EOUSA reasoned that there was no public interest which would

counterbalance or outweigh the privacy interests of third party individuals.

**EOUSA Disclosed All Reasonably Segregable Portions of Records.**

The District of Columbia Circuit has held that a District Court considering a FOIA action

has "an affirmative duty to consider the segregability issue sua sponte."  *Trans-Pacific Policing*

*Agreement v. U.S. Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).  The FOIA requires

that if a record contains information that is exempt from disclosure, any "reasonably segregable"

information must be disclosed after deletion of the exempt information unless the non-exempt

portions are "inextricably intertwined with exempt portions."  5 U.S.C. § 552(b); *Mead Data*

*Cent., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  In this case,

EOUSA has demonstrated with reasonable specificity that all reasonably segregable information

has been released.  Boseker Dec. at ¶¶41.  The documents withheld in full were: attorney work

product, Vaughn documents 1,2,3 and 4; an internal Opening /Closing form, Vaugh document 4;

records pertaining entirely to third parties, Vaughn Document 5 and Boseker Dec. at ¶40; and

grand jury transcripts, Vaughn document 13.  In the other documents only third party names and

other personal information were withheld,   see Vaughn documents 6,7,8,9,10,11,12, and a

summary of grand jury testimony, Vaughn document 12.   Accordingly, all information withheld

is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because

it is so intertwined with protected material that segregation is not possible or its release would

have revealed the underlying protected material.

**CONCLUSION**

For reasons stated herein, Plaintiff cannot establish any violation of the Freedom of

Information Act and summary judgment should be entered for EOUSA.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of November, 2005, a copy of the foregoing Motion for Summary Judgment was mailed first class postage prepaid  to  the defendant pro se

Manuel A. Geronimo
R22893-038
MCI Devens
PO Box 879
Ayer, MA 01432.


_____
Rhonda C. Fields
Assistant United States Attorney