UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL A. GERONIMO           *
    Plaintiff,                  *
                             *
Vs.                          *       Civil Action No. 05-01057 (JDB)
                             *
EXECUTIVE OFFICE For UNITED  *
STATES ATTORNEYS,            *
    Defendant,                  *

## AFFIDAVIT

I, MANUEL A. GERONIMO, Plaintiff in the above captioned cause, to be referred hereinafter as "Plaintiff" under the pain and penalty of perjury, affirm the following:

## BACKGROUND

1) On February 3, 2003 Plaintiff sent a letter to EOUSA, which was received by the EOUSA on February 12, 2003. This letter asserted that I had previously sent a letter dated November 13, 2002 to EOUSA see government **Exhibit A**.

2) Plaintiff received a letter sent by EOUSA in which they advised him that he needed to provide EUOSA with a certification of his identity, by one or more means described, and enclosed a form to assist him in complying with the requirement. In relevant part, the letter notified Plaintiff they had assigned his letter FOIA No. 03-431, and it also stated "We have no record of receiving any prior request from you". And it also stated that this was the final determination by EOUSA regarding his letter. Plaintiff was provided notification that he could appeal this determination to the office of Information and Privacy within 60 days of EOUSA's letter, and given the address, to which he could send the appeal, see government **Exhibit B**.

1

3) On March 3, 2003, received by EOUSA March 11, 2003 Plaintiff resubmitted his request because on "Exhibit B" EOUSA stated "We have no record of receiving any prior request from you." Plaintiff requested "my case agent's entire file...pertaining to me in criminal case No. 1:00CR10013-001, District of Massachusetts." See government **Exhibit C**. Plaintiff then enclosed the completed certification of identity form to this request.

4) By letter dated April 15, 2003, EOUSA notified Plaintiff that it had received my certification of identity and assigned request FOIA No. 03-1038. EOUSA advised Plaintiff that if my request constituted a very large request (i.e., a "Project Request" included a request for "all information about myself in criminal case files"), that the time it would take EOUSA to respond could be up to nine months. I was given the option to narrow my request for more specific records in order to reduce the time it might take to search and reply. See government **Exhibit D**.

5) On May 28, 2003 Plaintiff sent a letter that was received by EOUSA on June 4, 2003 in which Plaintiff complained to EOUSA of the delay in responding to his request. See government **Exhibit E**.

6) On letter dated June 25, 2003, EOUSA notified Plaintiff that it had received his correspondence, that there was a delay in processing my request, and that EOUSA was applying Open America v. Watergate Special Prosecution Force, to his request. See government **Exhibit F**.

7) On November 21, 2004, Plaintiff sent a letter to EOUSA in which he brought to their attention that all previous correspondences they have sent him were lost by BOP Officials and that he didn't have my FOIA case number because that was in the papers that were lost by BOP

Officials. Plaintiff also re-iterated that his request was for all records on myself. See government **Exhibit G**.

8) By letter dated January 31, 2005 EOUSA notified Plaintiff that it had located no responsive records after searching the USAO '**District of Maine**" (emphasis added). The letter advised Plaintiff of his right to appeal this determination to the OIP within 60 days of the date of this letter. See government **Exhibit H**. (It should be noted that the reference to the USAO/DME was a deliberated attempt to mislead Plaintiff) because as the government conceded on Mr. John F. Boseker declaration on Paragraph # 13, which stated, "On or about January 3, 2005, EOUSA was notified by the FOIA contact for the U.S. Attorneys Office for the **District of Massachusetts** ("USAO/DMA") that the only records located were public records: approximately 1500 pages of trial transcripts, 100 pages of appeal transcripts, and 100 pages of appeal material."

9) By letter dated February 14, 2005, Plaintiff responded that he was confused by the EOUSA letter dated January 31, 2005 because he had never requested any records located in Maine, but that his request concerned records in his criminal case file in the District of Massachusetts. Plaintiff also asked "if you could please clarify your January 31, 2005 letter it would be greatly appreciate." See government **Exhibit I**.

10) It should be noted that even though Mr. Geronimo asked the EOUSA to clarify their January 31,2005 it took over four months and a writ of Mandamus to compel the government to respond. And when it did it came up with a "fabricated document" see government **Exhibit J**. Please compare to government **Exhibit H** in which it still claimed that "the search for the records located in the United States attorney's Office (s) for the District of Massachusetts has revealed no records responsive to your request for your 'case agent's entire file pertaining

3

either directly or indirectly to me." But never the less included a note at the bottom of the page stating that they possessed approximately 3500 pages pertaining to me.

11) Plaintiff have not made any written request for the approximately 3500 pages mentioned in the EOUSA June 28, 2005 letter see government **Exhibit J** because in my original request I requested "my entire case agent's file and everything else on me including lab reports." There is no need for me to request it again. And the matter is now before this most honorable court.

12) On August 14, 2003 Plaintiff filed an appeal with OIP regarding the delay in processing, to which OIP responded that it was unable to render an appeal at this time and that "in the event that the EOUSA still has not responded to your request at the time you receive this letter, you may, if you choose, treat my letter as a denial of your appeal and bring action in an appropriate federal court." See government **Exhibit K**.

13) By letter dated September 26, 2005, Plaintiff was notified by EOUSA that it had processed the materials located in response to my request. Enclosed with this letter were 12 pages released in their entirety and 12 pages containing redactions. In addition Plaintiff was advised that 411 pages were being withheld in their entirety (as well as 66 pages of grand jury material), which had been review for segregability, and that access to his PSR could be obtained through contacting the U.S. Bureau of Prisons directly. EOUSA further advised Plaintiff that it had applied the following exemptions to material withheld in whole or part: 5 U.S.C § 552(b)(3) in conjunction with Federal Rule of Criminal Procedure 6(e)(Grand Jury);(b)(5), (b)(7)(c), and 5 U.S.C § 552a(j)(2). (EOUSA omitted exemption (b)(2), which was applied to one document.) In addition, EOUSA notified Plaintiff that it had referred 669 pages of material to U.S. Customs, 140 pages to DEA, as these records had originated with those government components. See government **Exhibit L**.

## CHALLENGES TO JOHN F. BOSEKER DECLARATION

14) The declaration of John F. Boseker, is not accurate and submitted in bad faith in part because it does not give any detail as of which part of the documents could be segregated but instead go into wholesale withholding. And also shows that the research was neither proper, adequate nor reasonable.

15) On Paragraph (33) it says: "the attorney work product and deliberative process, including factual information, are so interwoven as to make it **all attorney work product**." This statement is clearly made in bad faith for the simple purpose of claiming all this documents under the umbrella of the attorney work product and deliberative process, without considering segregability issues.

16) On Paragraphs (34-40) Mr. Boseker, claims that documents were withheld because the release will constitute an unwarranted invasion of personal privacy. The government is not practicing what it preaches, because they have already released a tremendous amount of information containing third party information including suspects under criminal investigation, individuals phone numbers and names of federal agents including their overseas traveling and reasons of those traveling which are connected to gathering information of suspects under criminal investigation. See State of North Dakota ExRel-Olson V. Andrus, 581 F2d 177(8th Cir. 1978). See Plaintiff **exhibit "D"**

17) On Paragraph (39) Mr. Boseker incorrectly stated: "In addition, Mr. Geronimo provided EOUSA with no authorization or consents to release otherwise privacy protected materials from any of the third party individuals to whom this exemption was applied." The Government ignores the fact that it is their responsibility and not that of the Plaintiff to prove that there was

a promise of confidentiality made to third party individuals. See Londrigan v. F.B.I, 670 F2d 1164 (D.C. Cir. 1981).

18) Throughout his declaration Mr. Boseker, claims the withholding of documents pursuant to statutes and exemptions, but it is not the agency's interpretation of a statute or that of an exemption that matters. Only those that evidence a congressional determination that certain materials ought to be kept in confidence will be sufficient to qualify under freedom of information specifically exempted from disclosure by another statute. 5 U.S.C. § 552 (b)(3) National Ass'n of Home Builders v. Norton at 28. For purposes of qualifying as a withholding statute under FOIA exemption for information specifically exempted from disclosure by another statute, a statute must on its face exempt matters from disclosure; court must find a congressional purpose for exempt matter from disclosure in the actual words of the statute, or at least in the legislative history of FOIA, not in the legislative history of the claimed withholding statute, nor in an agency's interpretation of the stature, and legislative history will not avail if the language of the statute itself does not explicitly deal with public disclosure. See National Ass'n of Home Builders v. Norton, 309 F. 3d 26 (D.C. Cir. 2002)

## CHALLENGES TO MARYELLEN BARRETT DECLARATION

The declaration of Maryellen Barrett, is not accurate and submitted in bad faith in part because it does not give any detail as of which part of the documents could be segregated but instead go into wholesale withholding, and because the research was not proper, adequate, nor reasonable.

19) On paragraph (8) it says "with three different FOIA requests...involving this case, there was some confusion with the search and what the requester was requesting." It should be noted that Plaintiff only made a single and simple request and not three as the

6

government claims. It was the government that took it upon itself in an obvious show of bad faith to give Plaintiff different request numbers in an attempt to discourage, mislead, delay, frustrate and confuse Plaintiff on his diligent struggle to obtain documents which he is entitle to.

20) On Paragraph (9) it states: "...I was informed that Mr. Geronimo did not want this material..." Plaintiff never stated that he didn't want this material, in fact Plaintiff's request stated: "...my entire case agent's file an everything either directly or indirectly to me including lab reports..." and this encompasses trial, appeal transcripts and everything else.

21) On Paragraph (11) it says: "...because of the confusion with this case..." Plaintiff contends that there was no reason for confusion as Plaintiff's request was plain and simple. This statement shows yet another attempt by the government to justify itself by not doing an adequate and reasonable search for documents as required by law.

On Paragraph (13) it says: "...all documents pertaining to Mr. Geronimo's case should have been maintained by docketing and/or by the AUSAs assigned to the case..." The Plaintiff argues that the search was neither proper nor reasonable and that further research is needed in order to provide Plaintiff his "entire case agent's file and everything on him either directly or indirectly." The affidavits submitted by the government do not meet the requirements and they were submitted in bad faith. As such the Affidavits must be clear, specific and adequately detailed; they must describe the withheld information and the reason for nondisclosure in a factual and non-conclusory manner; and they must be submitted in good faith. See <u>Hayden v. NSA, 608 F.2d 1381</u>, 1387 (D.C. Cir 1979).

Sworn on this 26th day of January 2006

Respectfully submitted,

Dated: 1-26-06

Manuel A. Geronimo

### CERTIFICATE OF SERVICE

I, Manuel A. Geronimo, do hereby affirm and attest that a true copy of the forgoing was mailed on this 26th day of January, 2006 by first class mail to Assistant United States Attorney Rhonda C. Fields at the United States Attorney's Office for the District of Columbia Judiciary Center 555 Fourth Street, N.W. Washington, D.C. 20001. Pursuant to Houston v. Lack, 487 U.S. 266, 274-275 (1988). Sworn and signed pursuant to 28 U.S.C Section 1746.

Manuel A. Geronimo
Reg. No. 22893-038
FMC Devens P.O. Box 879
Ayer, MA 01432

8