UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MANUEL A. GERONIMO, | ) | |
|           Plaintiff, | ) | |
|  | ) | |
| V. | ) | Civ. No. 05-1057 (JDB) |
|  | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
|           JUSTICE, et al., | ) | |
|           Defendant. | ) | |
| _____ | ) | |

REPLY TO PLAINTIFF'S RESPONSE AND OBJECTION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant respectfully submits this Reply to Plaintiff's Response and Objection to Defendant's Motion for Summary Judgment.

In his response plaintiff raises objection to the withholding of three general categories of documents: 1) documents processed by the Executive Office of United States Attorneys (EOUSA), 2) documents sent to the Drug Enforcement Administration (DEA) for processing, and 3) documents sent to the United States Customs Service (Customs) for processing.

In responding to the plaintiff's FOIA request, the EOUSA had received from the United States Attorney's Office for the District of Massachusetts (USAO) responsive documents which had been obtained from DEA and Customs. EOUSA did not make a determination to withhold those documents; rather, those documents were referred to their respective agencies for FOIA processing and direct response to the plaintiff. The Court allowed defendant to divide its response and initially file a dispositive motion concerning documents processed solely by EOUSA. A

1

dispositive motion concerning the documents sent to Customs (approximately 669 pages) and DEA (approximately 140 pages) is scheduled to be submitted by March 20, 2006. [1]

Due to the above, the defendant's initial summary judgment motion was directed only to the issues of the search conducted by the USAO and the documents processed by the EOUSA. Therefore this reply will address only the search conducted by the USAO and the documents processed by EOUSA.

The plaintiff contends that the defendant has failed to meet its burden of justifying the exemptions asserted, has failed to properly segregate documents, and requests that the government be required to "conduct a more proper, adequate and reasonable search to further uncover more responsive material related to plaintiff's request." Plaintiff's Response at p. 14.

## ARGUMENT

### A. Standard for Summary Judgment

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A genuine issue of material fact is one that would change the outcome of the litigation. *Id.* at 247. "The burden on the moving party may be discharged by 'showing' -- that is, pointing out to the [Court] -- that there is an absence of evidence to support the non-moving party's case." *Sweats Fashions, Inc. v. Pannill Knitting Company, Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).

Once the moving party has met its burden, the non-movant may not rest on mere

---

[1] DEA has advised that it has processed the documents sent to it and has responded to defendant. See status report filed on February 13, 2006. Customs is still processing its response.

allegations, but must instead proffer specific facts showing that a genuine issue exists for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Thus, to avoid summary judgment, the plaintiff must present some objective evidence that would enable the court to find he is entitled to relief. In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute. 477 U.S. 317, 322-23 (1986).

The summary judgment standards set forth above also apply to FOIA cases, which are typically decided on motions for summary judgment.[2] *See Cappabianca v. Commissioner, U.S. Customs Serv.*, 847 F.Supp. 1558, 1562 (M.D. Fla. 1994) ("once documents in issue are properly identified, FOIA cases should be handled on motions for summary judgment") (*citing Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993)). In a FOIA suit, an agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested either has been produced, not withheld, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dept. of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Weisberg v. U.S. Dept. of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show that the documents are exempt from disclosure. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology*

---

[2]For purposes of summary judgment, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review by the courts. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980).

*v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980).

Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'" *Public Citizen, Inc. v. Dept. of State*, 100 F.Supp.2d 10, 16 (D.D.C. 2000) (*quoting McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Citizens Commission on Human Rights v. FDA*, 45 F.3d 1325, 1329 (9th Cir. 1995); *Bowen v. FDA*, 925 F.2d 1224, 1227 (9th Cir. 1991). *See also Hayden*, 608 F.2d at 1387; *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981).

"Summary judgement is available to the defendant in a FOIA case, when the agency proves that it has fully discharged its obligations under FOIA." *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985.)  Agencies establish that all of their obligations under the FOIA have been met through declarations and/or *Vaughn* indices.  The declaration in this matter was provided by individuals familiar with the steps taken by the USAO and EOUSA in response to plaintiff's FOIA request.  Since the declarations and index in this matter demonstrate that the agency has met its obligations under the FOIA, and the pleadings, supplemented by this declaration, show no genuine issue as to any material fact and the defendant is entitled to judgment as a matter of law, summary judgment should be granted to the defendant. *See  Perry v. Block*, 684 F.2d 121 (D.C. Cir. 1982).

### B. Defendant's Searches Were Conducted In Good Faith And Were Adequate

#### a. The Applicable Legal Standard

To prevail on summary judgment, "the agency must demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Nation Magazine v.*

*U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C.Cir.1995) (internal quotations and citations omitted). An agency must search for documents in good faith, using methods that are reasonably expected to produce the requested information. *Valencia-Lucena*, 180 F.3d at 326 (citing *Oglesby*, 920 F.2d at 68). The principal issue is not whether the agency's search uncovered responsive documents, but whether the search was reasonable. *Oglesby*, 920 F.2d at 67 n. 13 (citing *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C.Cir.1986)); *Moore v. Aspin*, 916 F.Supp. 32, 35 (D.D.C.1996). The agency need not search every record in the system or conduct a perfect search. *SafeCard Services, Inc. v. Sec. & Exch. Comm'n*, 926 F.2d 1197, 1201 (D.C.Cir.1991); *Meeropol*, 790 F.2d at 952, 956. Nor need the agency produce a document where "the agency is no longer in possession of the document[ ] for a reason that is not itself suspect." *SafeCard Servs.*, 926 F.2d at 1201..

> Instead, to demonstrate reasonableness, the agency must set forth sufficient information in affidavits for the court to determine, based on the facts of the case, that the search was reasonable. *Nation Magazine*, 71 F.3d at 890 (citing *Oglesby*, 920 F.2d at 68). While an agency's affidavits are presumed to be in good faith, a plaintiff can rebut this presumption with evidence of bad faith. *SafeCard Servs.*, 926 F.2d at 1200. But such evidence cannot be comprised of "purely speculative claims about the existence and discoverability of other documents." *Id.* If the record raises substantial doubts regarding the agency's efforts, "particularly in view of well defined requests and positive indications of overlooked materials," summary judgment is not appropriate. *Valencia-Lucena*, 180 F.3d at 326 (internal quotations and citations omitted).

*Flowers v. I.R.S.*, 307 F.Supp.2d 60, 67 (D.D.C. 2004).

The fact that an agency once possessed responsive documents, but does not possess them at the time of the FOIA request does not preclude summary judgment in the agency's favor. *Landmark Legal Foundation v. E.P.A.*, 272 F.Supp. 2d 59, 66 (D.D.C. 2003); *Piper v. U.S. Dept. of Justice*, 294 F.Supp.2d 16, 21-22 (D.D.C. 2003) (citing *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 151--52: "[T]he Supreme Court asserted that "FOIA is only

directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control." The Court goes on to conclude that "[t]he Act does not obligate agencies to create or retain documents; it only obligates them to provide access to those which it in fact has created and retained.")

    b. **Defendant Met Its Search Obligation**

The searches conducted were reasonably calculated to find the requested documents. Following receipt of plaintiff's FOIA request, a search to determine the location of any and all records relating to plaintiff's request was conducted to comply with his FOIA request. Boseker Dec.at ¶ 22. Plaintiff had requested records pertaining to his criminal case number 00CR10013-001 out of the District of Massachusetts. *Id.* at Ex A. A request was made to the District of Massachusetts. *Id.* at ¶¶ 21-22. The records are maintained in the Criminal Case File System, and specifically in the criminal case file *U.S. v. Geronimo*. *Id.* at ¶22.

The computer case tracking system LIONS was used to determine the location of responsive files. The data base has fields for retrieval of information based on a defendant's name, USAO file jacket number and district court case number. *Id.* On about December 29, 2004 the USAO FOIA contact, Ms. Barrett, had docketing look up Manuel A. Geronimo in the LIONS system. Barrett Dec. at ¶5. Docketing had 1 box of materials which contained approximately 3,500 pages of trial transcripts, appeal transcripts and appeal materials. *Id.* at ¶5. On about August 1, Ms. Barrett did another search by inquiring whether the three AUSAs who had been involved in the case had responsive material, and another box of documents was found. *Id.* at ¶¶8-10. Ms. Barrett made copies of all the documents in both boxes and shipped them to EOUSA for processing. *Id. at ¶¶ 11-12.* All documents pertaining to plaintiff's case should have been

maintained by docketing and/or by the AUSAs assigned to the case. *Id.* at ¶ 13.

The search conducted was reasonably calculated to discover the requested documents. The places where the documents should have been maintained were searched. Plaintiff's claim of bad faith is purely speculative, conclusionary and unsupported by any evidence. See plaintiff's affidavit at ¶21. The record does not raise any substantial doubts regarding the agency's efforts in conducting the search for plaintiff's FOIA request.

### C. FOIA Exemptions Were Appropriately Applied

**Exemption 7(c)**

Plaintiff challenges " any and all withheld documents" on the ground that "the citizens have a genuine and significant interest and right to know that their government is up to." Response at p. 2.

The "law enforcement exemption" exempts from disclosure:

> (7) records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information. . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy.

5 U.S.C. § 552(b)(7). See also 5 U.S.C. § 552a (j)(2) (Privacy Act). This exemption, as well as the Privacy Act, protects the identities of suspects, witnesses, and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. *See, e.g., U.S. Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762-71 (1989) (privacy interests in a person's police arrest record); *Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).

In interpreting this exception, courts employ a balancing test weighing the privacy interests

of the affected individuals against the public interest in disclosure of the information.  *See, e.g., Oguaju v. United States*, 288 F.3d 448 (D.C. Cir. 2002).  Courts are quick to point out, however, that the public interest in disclosure refers to "open[ing] agency action to the light of public scrutiny," *id.* at 450 (quoting Reporter's Comm., 489 U.S. at 772), and "it does not include helping an individual obtain information for his personal use," *id.* (quoting *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000)).  The *Oguaju* court bluntly rejected the requestor's argument that the public interest was served in releasing information that might aid him in his defense against criminal charges: "Oguaju's personal stake in using the requested records to attack his convictions *does not count* in the calculation of the public interest." 288 F.3d at 450 (emphasis added).

In the instant matter, other than making conclusory statements, the plaintiff has failed to meet his burden of showing a public interest in the disclosure of the information requested.  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F.Supp. 24, 27 (D.D.C. 1995) *(citing Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987)).  The "crimes of government witnesses" and the "nature and extent and type of drugs being imported into the United States.  Specially (sic) concerning plaintiff's offense" (Plaintiff's Response at p. 2),  do not demonstrate a significant or compelling public interest.

On the other side of the balance, privacy interests of individuals involved in criminal investigations are routinely and properly accorded weight by the courts.  *See, e.g., Reporter's*

*Committee* 489 U.S. at 762-71; *Oguaju*, 288 F.3d at 451 (privacy interest of prison escapee);

*Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995).

The privacy interests of witnesses and individuals providing information in criminal investigations is well recognized.

> Since the Supreme Court decision in *Department of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989), the law has been clear. Individuals involved in criminal investigations, whether as a witness or a suspect, maintain a strong personal privacy interest. *See Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C.Cir.1990). An individual who testifies at trial does not waive this privacy interest beyond the scope of the trial record. *See Burge v. Eastburn*, 934 F.2d 577, 579 (5th Cir.1991). If the individuals actually involved in the criminal case have a strong interest in personal privacy, then it logically follows that individuals mentioned or identified as potential witnesses would be equally protected. *See Watson v. Department of Justice*, 799 F.Supp. 193, 196 (D.D.C.1992). To hold otherwise would discourage essential witness testimony, insurmountably handicapping the criminal justice system.
> The categorical withholding of any law enforcement records that identify third parties has been repeatedly upheld. *See, e.g., SafeCard Services v. SEC*, 926 F.2d 1197, 1206 (D.C.Cir.1991); *Nation Magazine v. United States Customs Service*, 71 F.3d 885, 896 (D.C.Cir.1995).

*Coleman v. F.B.I.*, 13 F.Supp.2d 75, 80 (D.D.C.1998).  *See, also U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (third party's request for law enforcement records or information about a private citizen can reasonably be expected to invade that citizen's privacy)*; Heggestad v. U.S. Dept. of Justice*, 182 F.Supp.2d 1, 13 (D.D.C.  2000)(The privacy interests of grand jury witnesses clearly outweighs any public interest in the information. Therefore material was properly withheld pursuant to Exemption 7(C).)

Additionally, in his Response, at pp. 2- 4, the defendant asked for notes and witness

statements from particular individuals[3].  By listing the names of particular individuals whose notes or witness statements he is requesting, plaintiff in effect is asking the defendant to acknowledge whether or not those individuals were witnesses or gave information to defendant.  Plaintiff has failed to allege or provide any evidence to support any public interest in disclosure of whether any of these individuals committed crimes or gave information to defendant about crimes committed under federal law.

This sort of categorical application of the balancing test is favored by courts where the nature of the request so clearly fits into a FOIA exemption.  *See, e.g., SafeCard Services, Inc. v. S.E.C.*, 926 F.2d 1197, 1206 (D.C. Cir. 1991) (quoting *Reporters' Committee*, 489 U.S. at 776).  This is particularly so in cases where the agency used a Glomar response.  *See, e.g., Oguaju* 288 F.3d at 450-51; *Nation Magazine v. U.S. Customs Service*, 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); *Burke v. U.S. Dep't of Justice*, 1999 WL 1032814, *5 (D.D.C. Sept. 30, 1999).  Although the court in *Nation Magazine* indicated that categorical assertions of Exemption 7(C) to support Glomar responses has its "limits," 71 F.3d at 885, the court permitted such categorical responses when "the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements are satisfied[.]"

On these facts, there can be but one inference drawn—that the information requested by Plaintiff falls squarely within Exemption 7(C) and so should not be disclosed.

The fact that the requester might be able to figure out the individuals' identities or that the identities have been disclosed elsewhere does not diminish their privacy interests.  *Fitzgibbon v.*

---

[3] To the extent plaintiff refers to documents he believes are Customs documents, defendant will respond in its subsequent filing concerning Customs and DEA.

*CIA*, 911 F.2d 755 (D.C. Cir. 1990); *Weisberg v. Dep't of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984).

Finally, plaintiff's waiver argument[4] based on *State of North Dakota. ex rel. Olson v. Andrus,* 581 F.2d 177 (8th Cir.1978) is misplaced. That case dealt with exemption 5 and waiver of governmental privilege in inter-agency communication, not the privacy interests of third parties which are at issue in this litigation. The privacy interests of third parties mentioned in law enforcement files are "substantial." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C. Cir. 1991). That a person's identity is revealed in other contexts does not vitiate the person's privacy interest; instead, the law to the contrary is clear: disclosure to a limited group in a particular context–even a public trial–does not amount to a waiver of privacy rights vis a vis the public at large. *Jones*, 41 F.3d at 247 (fact that law enforcement employee chose to testify or was required to testify or otherwise come forward in other settings does not amount to waiver of personal privacy); *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990); *Weisberg v. DOJ*, 745 F.2d 1476, 1491 (D.C. Cir. 1984); *Shores v. FBI*, 185 F. Supp.2d 77, 83 (D.D.C. 2002)(privacy interests not diminished by fact that plaintiff may deduce identities through other means or because already disclosed). Thus, that the identities of agents or witnesses may have been disclosed during discovery or trial in plaintiff's criminal proceedings does not eliminate their privacy interests. *See also Reporters Comm. for Freedom of the Press*, 489 U.S. at 763-64 ("information may be classified as 'private' if it is 'intended for or restricted to the use of a particular person or group or class of persons'") (quoting Webster's Third New Int'l Dictionary

---

[4] See Plaintiff's Response at p. 3

1804 (1976)).[5]

On the other hand, the "public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Servs.*, 926 F.2d at 1205. Whether or not the name of a particular witness or individual officer contained in an investigative file is revealed does not add any information to further the "'the citizens' right to be informed about what their government is up to,'" *Davis*, 968 F.2d at 1282 (quoting *Reporters Committee*, 489 U.S. at 773); the disclosed portions of the investigative file have satisfied that public interest. Thus, "unless access to names . . . of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure." *SafeCard Servs.*, 926 F.2d at 1206.

Plaintiff does not allege that defendant engaged in any illegal activity, much less does he offer any evidence of improper activity. As a result, the privacy interests of the third parties outweigh the public's interests in disclosure. *See Manna v. United States Dep't of Justice*, 51 F.3d 1158, 1166 (3d Cir. 1995), *cert. denied*, 516 U.S. 975 (1995) ("Absent proof of misconduct, we 'need not linger over the balance' because 'something . . . outweighs nothing every time'") (quoting *National Ass'n of Retired Federal Employees v. Horner,* 879 F.2d 873, 879 (D.C. Cir. 1989), *cert. denied*, 494 U.S. 1078 (1990)).

**Exemption 3**

Under exemption 3, document number 13 consisting of 66 pages of grand jury transcripts was withheld. Contrary to plaintiff's contention, Response at p. 11, defendant clearly explained

---

[5] *See also id.* at n.16 (privacy is claim of individuals to determine for themselves when, how and to what extent information about them is communicated to others).

that the exemption was being claimed in conjunction with Federal Rule of Criminal Procedure 6(e). See Vaughn Index at document 13, Boseker Declaration at ¶¶27-29, defendant's summary judgment memorandum at pp 11-12. Grand jury transcripts clearly are protected from disclosure by Exemption. *Fund for Constitutional Government v. National Archives & Records Service*, 656 F.2d 856, 869 (D.C. Cir. 1980).

**PreSentence Report**

Among the responsive documents found in the USAO file was a copy of plaintiff's presentence report (PSR). In its FOIA response to plaintiff EOUSA stated "a 26-page PSR is subject to the policies and regulations of the U.S. Bureau of Prisons. If you desire access to that document, please make a direct request to that agency." Boseker Dec. at Ex. L.

Pursuant to BOP policy, sentenced inmates are prohibited from retaining in their possession photocopies of their PSRs and other sentencing materials. BOP Program Statement 1351.07 prohibits most inmates (pretrial detainees are not affected) from retaining photocopies of their PSRs and SORs in their personal possession, thereby making such possession contraband. Sepanek Dec. at ¶7. Instead, inmates may access their documents through the Unit Team. *Id*. The prohibition on inmate retention of copies of PSRs takes away the ability to be coerced into showing PSRs and SORs, and applies to everyone so that an unwillingness to show the documents cannot be considered an unwillingness due to government cooperation, financial resources, or a past sexual offense involving minors. *Id*. This policy was implemented in 2002 due to increasing security problems when inmates were pressured by other inmates to reveal their PRS's for information such as whether they were informants, had financial resources, were incarcerated for offenses against minors, etc. *See Id.* at ¶¶4-6.

Although not allowed to retain photocopies of their PSR's inmates are allowed to access them by making a request to their Unit Team. *Id*. at ¶¶7-9, and Truman Dec at ¶2. Thus, plaintiff will be granted access to the PSR pursuant to BOP policy.[6] This Circuit has found that access to records, rather than possession of records, is sufficient to satisfy FOIA requirements. *See Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 70 (D.C. Cir. 1990). In *Oglesby*, the court noted that merely providing "records for . . . review in a public reading room . . . was adequate under FOIA." *Id*. Similarly, in *Tax Analysts v. United States Dep't of Justice*, 845 F.2d 1060 (D.C. Cir. 1988), this Court found that an agency "need not respond to a FOIA request for copies of documents where the agency itself has provided an alternative form of access." *Tax Analysts*, 845 F.2d at 1065-67, *aff'd*, 492 U.S. 136 (1989). *See also Mandel Grunfeld & Herrick v. United States Customs Serv.*, 709 F.2d 41, 42 (11th Cir. 1983) (compliance with FOIA by posting the requested information at the customshouse); *Lead Indus. Ass'n, Inc. v. Occupational Safety & Health Admin.*, 610 F.2d 70, 86 (2d Cir. 1979) (agency not required under FOIA to send requester copies of records that had appeared previously in a report published by the agency); *Chamberlain v. U.S. Dept., of Justice*, 957 F.Supp. 292, 296 (D.D.C. 1997), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1999). Thus, access to records will satisfy the requirement under FOIA to make records available to the individual.

Plaintiff appears to rely upon *Dep't of Justice v. Julian*, 486 U.S. 1, 8 (1988), for the conclusion that he is entitled to retain a copy of his PSR in his cell. *Julian* does not dictate that result, as the Supreme Court did not address whether the inmate had a right to keep the document.

---

[6] Review of his institution's records reflects that plaintiff has not requested access to his PSR. Truman Dec. at ¶3

in his possession within an institutional setting after obtaining it under FOIA. The issue before the Court was whether a PSR can be *released* to the subject under FOIA– that is, whether the reports fall under one of the FOIA exemptions. *Id*. 486 U.S. at 3-4.

In *Matsey v. U.S. Department of Justice*, 2005 WL 101867 (D.D.C. May 2, 2005) (unpublished), an inmate making a FOIA request to the BOP was told he could not retain a copy of his PSR pursuant to the Program Statement; however, he was told he could have access to the PSR. Additionally, the (b)(2) and (b)(7)(f) exemptions were claimed by BOP. The BOP contended that Matsey had failed to state a claim upon which relief can be granted because he had access to the PSR. The Court denied the BOP's motion to dismiss on the basis that the plaintiff had failed to stated a claim, but ultimately dismissed for failure to exhaust administrative remedies.

In its analysis the *Matsey* Court attempted to distinguish the holdings in *Oglesby and Tax Analysts*, *Mandel Grunfeld & Herrick v. United States Customs Service*, 709 F.2d 41, 42 (11th Cir. 1983) (holding that the Customs Service complied with FOIA by posting the requested information at the customshouse); and *Lead Industries Association, Inc. v. Occupational Safety & Health Administration*, 610 F.2d 70, 86 (2d Cir. 1979) (agency not required under FOIA to send requester copies of records that had appeared previously in a report published by the agency). See *Matsey*, 2005 WL 101867, at *4. The Court in *Matsey* concluded that a 1996 amendment to the FOIA superseded the prior interpretation of 5 U.S.C. § 552(a)(3)(A). The amendment came in the Electronic FOIA Amendments of 1996, Pub.L. No. 104-231, 110 Stat. 3048, and was intended to allow more accessability of electronic media; it does not apply where the requestor merely seeks a written document that the agency already maintains in written form. Subsection (a) (3) (B)

15

concerns a requester's choice of "form or format." Choice of form or format typically means a choice between microfiche and computer form, *see Dismukes v. Department of the Interior*, 603 F.Supp. 760, 763 (D.D.C. 1984), or visicorder charts and paper form. *See Chamberlain*, 957 F.Supp. at 296. Thus, the *format* in which a requester may receive information does not answer the question of whether in an institutional setting, an inmate must be able to retain custody of a document responsive to a FOIA request versus simply obtaining access to it.

The BOP has issued guidance to what materials are generally treated as contraband within its institutions. See 28 C.F.R. § 553.12(b)(2) ("Staff shall consider as nuisance contraband any item other than hard contraband, which has never been authorized, or which may be, or which previously has been authorized for possession by an inmate, but whose possession is prohibited when it presents a threat to security. . ."); 28 C.F.R. § 553.13 (setting forth procedures for seizure and disposal of contraband by BOP staff).

The major reason for the policy regarding Program Statement 1351.05 was that there were increased incidents of harm to inmates caused by their possession of PSR's. See Program Statement 1351.05 at 15-16 and Sepanek Declaration *supr*a. The policy, therefore, implements BOP's mandate to ensure that its prisons are secure. See 18 U.S.C. § 4042(a). Such modifications in BOP policy regarding what constitutes contraband are clearly authorized by BOP regulations. See 28 C.F.R. § 553.12(b)(2) (nuisance contraband may include any item, even if previously authorized for possession by an inmate, when it presents a threat to security) (emphasis added).

In implementing FOIA in a reasonable manner, the Court should decline to micro-manage the BOP's security decisions in the manner plaintiff seems to request, and should give deference to the BOP's expertise in such matters. "Running a prison is an inordinately difficult undertaking that

16

requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner v. Safley*, 482 U.S. 78, 84 (1987); *see also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987) ("we have often said that evaluation of penological objectives is committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'") (quotinq *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

The FOIA is an access statute. It grants individuals access to public documents. 5 U.S.C. §552. Consistent with FOIA, Program Statement 3151.05 permits prisoners to access their PSRs. Thus, Program Statement 3151.05 does not conflict with FOIA. The simple denial of *retention* of the PSR in the institution for legitimate security reasons, while allowing an inmate reasonable access to the document, is not an unlawful withholding.

### D. **EOUSA Disclosed All Reasonably Segregable Portions of Records.**

The District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue sua sponte." *Trans-Pacific Policing Agreement v. U.S. Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). In this case, EOUSA has demonstrated with reasonable specificity that all reasonably segregable information

17

has been released. Boseker Dec. at ¶¶41. The documents withheld in full were: attorney work product, Vaughn documents 1,2,3 and 4; an internal Opening /Closing form, Vaugh document 4; records pertaining entirely to third parties, Vaughn Document 5 and Boseker Dec. at ¶40; and grand jury transcripts, Vaughn document 13. In the other documents only third party names and other personal information were withheld,  see Vaughn documents 6,7,8,9,10,11,12, and a summary of grand jury testimony, Vaughn document 12.   Accordingly, all information withheld is exempt from disclosure pursuant to a FOIA exemption or is not reasonably segregable because it is so intertwined with protected material that segregation is not possible or its release would have revealed the underlying protected material. [7]

### E. Discovery Is Not Warranted in This Matter

Plaintiff has not established that discovery is warranted in this matter.

In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, *Goland*, 607 F.2d at 355, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate, *see, e.g., Washington Post Co. v. United States Dep't of State*, 840 F.2d 26, 28 (D.C.Cir.1988) (non-moving party produced hard evidence in the form of books and press accounts suggesting privacy exemption did not apply), vacated on other grounds,898 F.2d 793 (1990); *Porter v. United States Dep't of Justice*, 717 F.2d 787, 791-93 (3d Cir.1983) (agency's affidavits included conflicting information); *Schaffer v. Kissinger*, 505 F.2d 389, 390-91 (D.C.Cir.1974) (per curiam) (inadequate reasons stated for application of national security exemption).

*Carney v. U.S. Dept. of Justice* 19 F.3d 807 (1994), 812 -813 (2nd Cir.1994). Plainitff has failed to

---

[7] In the Affidavit attached to plaintiff's Response (Document No. 20) at ¶11, plaintiff admits that he never made a written request for the approximately 3500 pages of public documents in the USAO file. As is reflected in Boseker Dec. at Exhibits J and L, a written request for the documents plainitff desires should be submitted to EOUSA. A copying fee applies to all copies after the first 100 pages.

supply any tangible evidence showing bad faith, that exemptions do not apply, or other reason why summary judgment is not appropriate. Therefore, discovery is not warranted.

## CONCLUSION

For reasons stated herein, Ppaintiff cannot establish any violation of the Freedom of Information Act and summary judgment should be entered for EOUSA.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney

_____
R. CRAIG LAWRENCE, D.C. BAR # 171538
Assistant United States Attorney

_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 23rd day of February, 2006, a copy of the foregoing Motion for Summary Judgment was mailed first class postage prepaid to the defendant pro se

Manuel A. Geronimo
R22893-038
MCI Devens
PO Box 879
Ayer, MA 01432.

                                        Rhonda C. Fields
                                        Assistant United States Attorney