UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL A. GERONIMO,                    )
                    Plaintiff,         )
                                       )
        v.                             )        Civ. No. 05-1057 (JDB)
                                       )
UNITED STATES DEPARTMENT OF            )
        JUSTICE,                       )
                    Defendant.         )
_____ _____)

## DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT CONCERNING CUSTOMS DOCUMENTS

Defendant, through its undersigned attorneys, respectfully moves this Court for summary judgment on behalf of the Executive Office of United States Attorneys ("EOUSA"on the grounds that there are no material facts in dispute and the EOUSA is entitled to judgment in its favor as a matter of law. Fed. R. Civ. P. 56. In support of this motion are Defendant's Memorandum of Points and Authorities, Statement of Facts Not In Dispute and the attached declaration of Marshall H. Fields, Jr., Chief, Freedom of Information Act/Privacy Act (FOIA/PA) Section, U.S. Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS). .

Plaintiff should take notice that any factual assertions contained in the accompanying affidavit and other attachments in support of defendant's motion will be accepted by the Court as true unless the plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in defendant's attachments. *See Neal v. Kelly*, 963 F.2d 453 (D.C. Cir. 1992), Local Rule 7.1 and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be

supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Therefore, because the agency identified here has complied with all FOIA requirements, the complaint with regard to this agency should be dismissed.

Respectfully submitted,

_____
KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____
RUDOLPH  CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


_____
RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MANUEL A. GERONIMO, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 05-1057 (JDB) |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| JUSTICE, | ) | |
| Defendant. | ) | |
| _____ | ) | |

## STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Defendant submits this statement of material facts as to which there is no genuine dispute in accordance with Local Rule 7.1(h).

1. On January 18, 2006, the Executive Office for the United States Attorneys (EOUSA) forwarded plaintiff's FOIA request to Customs for processing and direct response to the plaintiff. Fields Dec. at ¶¶ 4-5.

2. By letter dated May 5, 2006, Customs released 49 pages to plaintiff. *Id.* at ¶ 8.

3. Eight pages were released in full and 41 were released in part with redactions.   Vaughn Index at p. 14.

4.  Two hundred and thirty-eight (238) pages were withheld in their entirety pursuant to FOIA exemptions.  Fields Dec. at ¶6.

5.  One hundred thirty (130) pages were determined to be non-responsive, because they did not pertain to investigation of plaintiff or the criminal case entitled *U.S. v. Manuel Geronimo,* #1:00Cr10013-001.   *Id.*

6.  The remaining two hundred and fifty-four (254) pages were duplicates of documents mentioned above.  Fields Dec. *Id.* at ¶ 7

                    Respectfully submitted,


                    _____
                    KENNETH L. WAINSTEIN, D.C. BAR # 451058
                    United States Attorney


                    _____
                    RUDOLPH  CONTRERAS, D.C. Bar No.  434122
                    Assistant United States Attorney


                    _____
                    RHONDA C. FIELDS
                    Assistant United States Attorney
                    Civil Division
                    555 Fourth Street, N.W.
                    Washington, D.C.  20530
                    202/514/6970

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MANUEL A. GERONIMO,               )
                    Plaintiff,    )
                                  )
        v.                        )      Civ. No. 05-1057 (JDB)
                                  )
UNITED STATES DEPARTMENT OF       )
        JUSTICE,                  )
                    Defendant.    )
_____ )

**MEMORANDUM IN SUPPORT OF DEFENDANT'S PARTIAL
MOTION FOR SUMMARY JUDGMENT CONCERNING DEA DOCUMENTS**

**INTRODUCTION**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. This memorandum pertains to the processing of a portion of plaintiff's FOIA request by U.S. Immigration and Customs Enforcement (Customs).

**Factual and Procedural Background**

The factual and procedural background of the matter is set forth in full in defendant's motion for summary judgement filed on November 15, 2005.

In sum, the Executive Office for United States Attorneys (EOUSA) received a FOIA request from plaintiff seeking

> My case agent's entire file pertaining either directly or indirectly to me. My criminal case entitled U.S. v. Manuel Geronimo #1:00Cr10013-001 out of the districts of Massachusetts, and everything else on me including all lab reports.

Boseker Dec. at ¶ 6 and Ex A.

Searches were conducted in the United States Attorney's Office for the District of Massachusetts. *See* Barrett Dec.

By letter dated September 26, 2005, EOUSA notified Mr. Geronimo that it had processed the materials located in response to his request. Enclosed with this letter were 12 pages released in their entirety and 12 pages containing redactions. In addition, Mr. Geronimo was advised that 414 pages were being withheld in their entirety (as well as 66 pages of grand jury material), which had been reviewed for segregability, and that access to his PSR could be obtained through contacting the U.S. Bureau of Prisons directly  In addition, EOUSA notified Mr. Geronimo that it had referred 669 pages of material to U.S. Customs and140 pages to DEA, as these records had originated with those government components. These components were to review, make a determination regarding exemptions, and provide Mr. Geronimo with a direct response. Again, Mr. Geronimo was advised that public records were available upon request, subject to a copying fee. Boseker Dec. at ¶20 and Exhibit L.

Since other agency documents were identified and forwarded to those agencies, the Court has allowed defendant to bifurcate its response by submitting EOUSA's response separately from those of Customs and DEA. The DEA has processed the documents referred to it and submitted its response to plaintiff. A motion for partial summary judgment pertaining to the DEA document has been filed. Customs now has completed processing the documents submitted to it.

Therefore, this memorandum addresses the FOIA exemptions applied by Customs.

## II.    STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where "there is no genuine issue as to any material fact and . . .the moving party is entitled to judgment as a matter of law." *Washington Post Co. v. U.S. Dep't of Health and Human Services*, 865 F.2d 320, 325 (D.C. Cir. 1989). As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

An agency satisfies the summary judgment requirements in a FOIA case by providing the Court and the plaintiff with affidavits or declarations and other evidence which show, if applicable, that the documents are exempt from disclosure. *Hayden v. National Security Agency Cent. Sec. Serv.*, 608 F.2d 1381, 1384, 1386 (D.C. Cir. 1979), *cert. denied*, 446 U.S. 937 (1980); *Church of Scientology v. U.S. Dept. of Army*, 611 F.2d 738, 742 (9th Cir. 1980). Summary judgment may be awarded to an agency in a FOIA case solely on the basis of agency affidavits or declarations if the "affidavits are 'relatively detailed, non-conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'" *Public Citizen, Inc. v. Dept. of State*, 100 F.Supp.2d 10, 16 (D.D.C. 2000)(reversed in part on different issue by 276 F.3d 634 (D.C.Cir.2000) (quoting *McGhee v. Central Intelligence Agency*, 697 F.2d 1095, 1102 (D.C. Cir. 1983).

Specifically, summary judgment is available to a defendant agency upon proof that it has fully discharged its obligations under FOIA. *Miller v. U.S. Dept. of State*, 779 F.2d 1378, 1382 (8th Cir. 1985.) The declarations in this matter were provided by individuals familiar with the steps taken by defendant in responding to Plaintiff's FOIA request. Since they demonstrate that the defendant met its obligations under the FOIA, and the pleadings and other filings show no genuine issue as to any material fact and EOUSA is entitled to judgment as a matter of law, summary judgment should be granted to EOUSA.

# III.   ARGUMENT

**Customs Properly Applied FOIA Exemptions.**

### Exemption (b)(2)

Title 5, United States Code, Section 552 (b)(2) ("Exemption 2") exempts from mandatory disclosure records "related solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Exemption 2 applies primarily to two types of materials: (1) internal agency matters so routine or trivial that they could not be "subject to . . . a genuine and significant public interest;" and (2) internal agency matters of some public interest "where disclosure may risk circumvention" of statutes or agency regulations.  *Dept. of Air Force v. Rose*, 425 U.S. 352, 369-70 (1976); *National Treasury Employees Union v. U.S. Customs Service*, 802 F.2d 525, 528-30 (D.C. Cir. 1986); *Crooker v. Bureau of Alcohol, Tobacco and Firearms*, 670 F.2d 1051, 1073-74 (D.C. Cir. 1981).  Depending upon the nature of the information, documents will fall within either the "low (b)(2) category" or the "high (b)(2) category."

"Low (b)(2)" information refers to internal procedures and practices of an agency the disclosure of which would constitute an administrative burden unjustified by any genuine and significant public benefit.  *Martin v. Lauer*, 686 F.2d 24, 34 (D.C. Cir. 1982).  "Low b(2)" information can be protected only if the information qualifies as a personnel rule or internal practice of an agency or is sufficiently related to such a rule or practice.  *See Schwaner v. Dept. of the Air Force*, 898 F.2d 793, 795 (D.C. Cir. 1990).  Thus, trivial administrative data, such as file numbers, mail routing stamps, initials, data processing notations, brief references to previous communications, and similar administrative markings are exempt from disclosure.  The reason is that administrative agencies should not be burdened by responding to requests for trivial

information unlikely to be the subject of public interest. *Martin v. Lauer*, 686 F.2d at 34.

Exemption "high (b)(2)" exempts from mandatory disclosure documents relating to more substantive internal matters. *See Schiller v. NLRB*, 964 F.2d 1205, 1207 (D.C. Cir. 1992). Withholding is permitted in this category to the extent that disclosure would reveal techniques and procedures for law enforcement investigations or prosecutions, id., would disclose guidelines for law enforcement investigations, or would risk circumvention of an agency statute or impede the effectiveness of an agency's law enforcement activities. *See Crooker*, 670 F.2d 1051 (D.C. Cir. 1981) (en banc); *Hardy v. AT*, 631 F.2d 653, 656 (9th Cir. 1980).

Deference has been accorded to law enforcement matters under Exemption 2. Courts have interpreted this exemption to apply to a wide range of information, including general guidelines for conducting investigations (*see PHE, Inc. v. Dept. of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993)); guidelines for conducting post-investigation litigation (*Schiller v. NLRB*, 964 F.2d at 1207)); a training manual with information pertaining to surveillance techniques (*Crooke*r, 670 F.2d at 1073); criteria for prison gang-member classification (*Jimenez v. FBI*, 938 F. Supp. 21, 27 (D.D.C. 1996)); and DEA's drug-violator codes *(Albuquerque Publishing Co. v. Department of Justice*, 726 F. Supp. 851, 854 (D.D.C. 1989).

Here, Exemption 2 (i.e., "low 2") was properly applied to the following documents:

3 – ICE used this exemption to redact the addresses and telephone numbers of Agency personnel;

4 – ICE used this exemption to exempt from disclosure trivial information such as case and page numbers;

5 – ICE used this exemption to exempt from disclosure trivial information such as case and page numbers;

7 – ICE used this exemption to redact from disclosure the Special Agent's address and telephone number

29 – ICE used this exemption to exempt from disclosure trivial information such as case numbers, program codes, class numbers, TECS access codes and telephone numbers;

30 – ICE used this exemption to exempt from disclosure trivial information such as case numbers, program codes, class numbers, TECS access codes and telephone numbers.

34 – ICE used this exemption to exempt from disclosure report numbers; program, commodity, reliability, evaluation and source codes, TECS access codes and telephone numbers

Exemption "high 2,"  to protect from disclosure internal matters of a substantial nature the disclosure of which could risk circumvention of agency requirements, was properly applied to the following Vaughn Index documents:

1 –  ICE used this exemption to redact case processing information. Release of this information would alert criminals as to how ICE sequentially processes an investigation;

2 – ICE used this exemption to redact case processing information. Release of this information would alert criminals as to how ICE sequentially processes an investigation;

4 – ICE also used this exemption to exclude from disclosure internal information of a more substantial nature. Release of this information could hinder future prosecutions and have a negative effect on the operation of government offices. ICE also used this exemption to redact the names of Special Agents and internal investigative procedures;

5 – ICE also used this exemption to exclude from disclosure internal information of a more substantial nature. Release of this information could hinder future prosecutions and have a negative effect on the operation of government offices. ICE also used this

6

exemption to redact the names of Special Agents and internal investigative procedures;

6 – ICE used this exemption to redact the names of Special Agents. Release of this information could hinder future prosecutions and have a negative effect on the operation of government offices;

14 – to protect from disclosure internal matters of a substantial nature the disclosure of which could risk circumvention of agency requirements;

19 – ICE used this exemption to withhold the transcripts of tape-recorded conversations of third parties

20 – ICE used this exemption to withhold the transcripts of tape-recorded conversations of third parties;

21 –to protect from disclosure internal matters of a substantial nature the disclosure of which could risk circumvention of agency requirements. ICE used this exemption to withhold case notes.

22 - ICE used this exemption to withhold the transcripts of tape-recorded conversations of third parties;

23 - ICE used this exemption to withhold the transcripts of tape-recorded conversations of third parties;

25 – facsimile sheet

26 – ICE used this exemption to exempt from disclosure these hand written notes of an ICE agent, the disclosure of which could jeopardize subsequent prosecutions;

27 – ICE used this exemption to exempt from disclosure these hand written notes of a Special Agent the disclosure of which could jeopardize subsequent prosecutions and harm the effective operation of government offices;

29 – ICE also used this exemption to exclude from disclosure internal information of a more substantial nature, such as law enforcement techniques and case-processing information. Release of this information could hinder future prosecutions;

30 – ICE also used this exemption to exclude from disclosure internal information of a more substantial nature that relate to the investigation, but not specifically to the plaintiff. Release of this information could hinder future prosecutions;

31 – ICE used this exemption to exempt from disclosure these hand written notes of an ICE agent, the disclosure of which could jeopardize subsequent prosecutions;

33 – ICE used this exemption to exempt from disclosure these hand written notes of an ICE agent, the disclosure of which could jeopardize subsequent prosecutions;

34 – ICE also used this exemption to exclude from disclosure internal information of a more substantial nature that relate to the investigation, but not specifically to the plaintiff. Release of this information could hinder future prosecutions;

40 – ICE used this exemption to withhold internal processing information;

42 – ICE used this exemption to exempt from disclosure the pager inventory analysis. Release of this information could hinder future prosecutions.

Most of the above described (b)(2) exemptions were used in conjunction with other exemptions discussed herein. See Vaughn Index at the above document numbers.

**Exemption (b)(5)**

Exemption 5 protects from disclosure inter- and intra-agency communications that are; covered by a traditional civil discovery privilege. *See, e.g. Rockwell Internat'l Corp. v. Department of Justice*, 235 F.3d 598, 601 (D.C. Cir. 2001); *Martin v. Office of Special Counsel*, 819 F.2d 1181, 1185 (D.C. Cir. 1987). Further, it does so without regard to the needs of a

particular plaintiff. *Id*. at 1184.

Here, certain documents are protected by the deliberative process privilege.

**Deliberative Process Privilege**

The deliberative process privilege protects predecisional and deliberative communications, shielding from disclosure "the deliberative process that precedes most decisions of government agencies." *Russell v. Department of the Air Force*, 682 F.2d 1045, 1047 (D.C. Cir. 1982). For the privilege to apply, however, the communication must be both predecisional, i.e., "antecedent to the adoption of an agency policy," *Jordon v. Department of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)(en banc), overruled in part on other grounds, *Crooker v. Bureau of Alcohol, Tobacco, and Firearms*, 620 F.2d 1051 (D.C. Cir. 1981)(en banc), and deliberative "in that it makes recommendations or expresses opinions on legal and policy matters," *Vaughn v. Rosen*, 523 F.2d 1136, 1143-144 (D.C. Cir. 1975). "[T]he exemption protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency." *Russell*, 682 F.2d at 1048.

There are essentially three policy bases for this privilege. First, it protects creative debate and candid considerations of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided[,] not for matters they considered before making up their minds." *Jordan*, 591 F.2d at 772-73 (citation omitted).

Thus, the exemption "guard[s] against disclosure of documents that suggest 'as agency position that which is as yet only personal position.'" *Russell*, 682 F.2d at 1048 *(quoting Coastal*

*States Gas Corp.*, 617 F.2d 854, 866 (D.C. Cir. 1980)).  In addition, when evaluating a claim of

deliberative process privilege, courts must defer to the agency's explanation of its decisional

process, given the agency's expertise in determining "what confidentiality is needed 'to prevent

injury to the quality of agency decisions.'"  *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989),

*quoting Chemical Mfgrs. Ass'n v. CPSC*, 600 F. Supp. 114, 118 (D.D.C. 1984).  The critical factor

"is whether disclosure of the information would 'discourage candid discussion within the

agency.'"  *Access Reports v. Department of Justice*, 926 F.2d 1192, 1195 (D.C. Cir. 1991), *quoting*

*Dudman Communications Corp. v. Department of Air Force*, 815 F.2d 1565, 1567-68 (D.C. Cir.

1987).

      Exemption 5 was applied to the following Vaughn Index documents :

      26, 27, 31, 33, 40, 41 – hand written notes of agents,  and interagency memorandum to

      exempt from disclosure internal memorandums not available as part of the deliberative

      process.

See Vaughn Index at the above document numbers.

      **Exemptions (b)(6) and (b)(7)**

      **Exemption 6**

      Exemption 6 permits the government to withhold all information about individuals in

"personnel and medical files and similar files" when the disclosure of such information "would

constitute an unwarranted invasion of personal privacy."  *See* 5 U.S.C. § 552(b)(6).  The threshold

issue to be determined in the application of Exemption 6 was firmly established in *U.S. Dept. of*

*State v. Washington Post Co.*, 456 U.S. 595 (1982).  The Supreme Court made clear that all

information that "applies to a particular individual" meets the threshold requirement for protection

under Exemption 6.  *Id*. at 602.  The materials withheld in this matter are part of a law

enforcement file and are identifiable by an individual's name or other personal identifier and

apply to a particular individual.  Therefore, these documents meet the threshold requirement for

protection under Exemption 6.  *See Washington Post Co.*, 456 U.S. at 602.

      "The next step under Exemption 6 involves identifying the relevant privacy interests in

non-disclosure and the public interests in disclosure, and determining 'whether, on balance,

disclosure would work a clearly unwarranted invasion of personal privacy.'"  *Reed v. National*

*Labor Relations Board, et al.*, 927 F.2d 1249, 1251 (D.C. Cir. 1991) *(quoting National Ass'n of*

*Retired Federal Employees v. Horner*, 879 F.2d 873, 875 (D.C. Cir. 1989), *cert. denied*, 494 U.S.

1078 (1990)).  "'The phrase 'clearly unwarranted invasion of personal privacy' enunciates a

policy that will involve a balancing of interests between the protection of an individual's private

affairs from unnecessary public scrutiny, and the preservation of the public's right to

governmental information.'"  *Dept. of the Air Force v. Rose*, 425 U.S. 352, 372 (1976).

### Exemption (b)(7)

      Exemption 7 of the FOIA protects from disclosure "records or information compiled for

law enforcement purposes" under certain circumstances.  5 U.S.C. § 552(b)(7).  "[T]he term 'law

enforcement purpose' is not limited to criminal investigations but can also include civil

investigations and proceedings in its scope."  *Mittleman v. Office of Personnel Management*, 76

F.3d 1240, 1243 (D.C. Cir. 1996), *cert. denied*, 519 U.S. 1123 (1997) (*citing Pratt v. Webster*,

673 F.2d 408, 420 n.32 (D.C. Cir. 1982)).  When, however, a criminal law enforcement agency

invokes Exemption 7, it "warrants greater deference than do like claims by other agencies."  *Keys*

*v. U.S. Dept. of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt v. Webster*, 673 F.2d

408, 418 (D.C. Cir. 1982)).  A criminal law enforcement agency must simply show that "the

nexus between the agency's activity . . . and its law enforcement duties" is "'based on information

sufficient to support at least "a colorable claim" of its rationality.'" *Keys,* 830 F.2d at 340 (quoting Pratt, 673 F.2d at 421).

The files created and maintained by the USAO are directly related to its purpose of the criminal prosecution of plaintiff. Boseker Dec. at ¶34. The records referred to Customs by the EOUSA request are criminal investigative records. The records were compiled by that law enforcement agency during criminal law enforcement investigations. Fields Dec. at ¶ 10.

### Exemption 7(C)

Exemption 7(C) of the FOIA exempts from mandatory disclosure information compiled for law enforcement purposes when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. ' 552(b)(7)(C). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Office of Personnel Management*, 76 F.3d 1240, 1243 (D.C. Cir. 1996), cert. denied, 519 U.S. 1123 (1997) (citing *Pratt*, 673 F.2d at 420 n.32). When, however, a criminal law enforcement agency invokes Exemption 7, it "warrants greater deference than do like claims by other agencies." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (*citing Pratt, 673 F.2d at 418*). A criminal law enforcement agency must simply show that "the nexus between the agency's activity . . . and its law enforcement duties" is "'based on information sufficient to support at least "a colorable claim" of its rationality.'" *Key*s, 830 F.2d at 340, (quoting Pratt, 673 F.2d at 421).

Once the agency has demonstrated that the records were compiled for law enforcement purposes, the Court must next consider whether the release of information withheld "could reasonably be expected to constitute an unwarranted invasion of personal privacy." This determination necessitates a balancing of the individual's right to privacy against the public's right

of access to information in government files.  *See, e.g., Reporters Comm.*, 489 U.S. at 776-780.

The Supreme Court has made clear that "whether disclosure of a private document under Exemption 7(C) is warranted must turn on the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny,' *Dep't of Air Force v. Rose*, 425 U.S. at 372, rather than on the particular purpose for which the document is being requested."  *Reporter's Comm.*, 489 U.S. at 772 (internal quotation marks omitted).  Information that does not directly reveal the operations or activities of the government "falls outside the ambit of the public interest that the FOIA was enacted to serve." *Id.* at 775.  The plaintiff bears the burden of establishing that the "public interest in disclosure is both significant and compelling in order to overcome legitimate privacy interests." *Perrone v. FBI*, 908 F.Supp. 24, 27 (D.D.C. 1995) *(citing Senate of Puerto Rico v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987)).  Significantly, it is the "interest of the general public, and not that of the private litigant" that matters.  *Brown v. FBI*, 658 F.2d 71, 75 (2d Cir.1981).  "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'"  *Davis v. Dep't of Justice,* 968 F.2d 1276, 1282 (D.C. Cir. 1992) (quoting *Reporters Comm.*, 489 U.S. at 773) (internal quotation marks omitted).

The privacy interests of third parties mentioned in law enforcement files are  "substantial," while "[t]he public interest in disclosure [of third-party identities] is not just less substantial, it is insubstantial." *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir. 1991).  Our Court of Appeals has held "categorically" that "unless access to names and addresses of private individuals appearing in files within the ambit of Exemption 7(C) is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is

13

exempt from disclosure." *SafeCard Services*, 926 F.2d at 1206.

Here, the information withheld under Exemption (b) (7)(C) was " compiled for law enforcement purposes in order to prosecute Mr. Geronimo." Boseker Dec. at ¶34. The also were compiled as part of a criminal investigation by Custroms, clearly a law enforcement purpose. See Fields Dec. at ¶ 10. As such, it meets the Exemption C threshold requirement of being compiled for law enforcement purposes.

In addition, the agency reasonably relied on Exemption C to justify withholding the two types of information withheld under this Exemption. Release of the first group of information withheld -- names of federal agents who participated in the investigation and prosecution of this case.-- could reasonably be expected to constitute an unwarranted invasion of personal privacy. The names of law enforcement officers who work on criminal investigations have traditionally been protected against release by Exemption 7(C). *Davis,* 968 F.2d at 1281; *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 487-488 (D.C. Cir. 1980). If the information were released, law enforcement personnel could be subjected to harassment or other harm. These persons have protected privacy interests in the conduct of law enforcement investigations. Fields Dec. at ¶¶ 9-15. By contrast, there is no public interest in disclosure of names of Special Agents. *Id.* The names of the federal agents will not "shed[] light on [the] agency's performance of its statutory duties." *Reporters Comm*., 489 U.S. at 772, as contemplated by the FOIA. In fact, the public has an interest in non-disclosure of this information as disclosure may diminish the ability of law enforcement personnel to perform their duties. *Id.*

The second group of information withheld pertains to the names, files and personal information of other third parties. Exemption 7(C) consistently has been held to protect the identities of suspects and other persons of investigatory interest who are identified in agency

records in connection with law enforcement investigations. *Reporters Comm*., 489 U.S. at 780; *Farese v. U.S. Dep't of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987) (individuals who provide information to law enforcement authorities, have protectable privacy interests in their anonymity). See also *Computer Prof'ls*, 72 F.3d 897, 904 D.C. Cir 1996); *Farese v. U.S. Dept. of Justice*, 683 F. Supp. 273, 275 (D.D.C. 1987). The fact that the requester might be able to figure out the individuals' identities through other means or that their identities have been disclosed elsewhere does not diminish their privacy interests. *Fitzgibbon v. CIA*, 911 F.2d 755 (D.C. Cir. 1990); *Weisberg v. Dept. of Justice*, 745 F.2d 1476, 1491 (D.C. Cir. 1984). Releasing their identities and information pertaining to these individuals would place them in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file, and could place the individuals into jeopardy of physical harm Fields Dec. at ¶¶ 11-15. Indeed, an agency may categorically assert Exemption 7(C) to protect the identities of witnesses or other persons mentioned in law enforcement files in such a way as to associate them with criminal activity. *Reporters Comm*., 489 U.S. at 780; *Nation Magazine v. U.S. Customs Service,* 71 F.3d 885, 893, 895-896 (D.C. Cir. 1995); *SafeCard Services*, 926 F.2d at 1206. Moreover, the disclosure of third party information might have the effect of chilling future cooperation by third parties with law enforcement. Fields Dec. at ¶ 22.

In this case, the exemptions were applied to the names and identifying information of government personnel and third parties in the following documents: 1–8, 12, 14-32, 34-46.

Vaughn Index documents 19, 20, 22, 23 contain transcriptions of conversations of third parties. The third parties clearly have a privacy interest in the content of their conversation as well as their identities. Plaintiff has not articulated any public interest in the disclosure of third

party conversation.  *See Monaco v. Department of Justice, et al.*, Civil Action No. 02-1843 (EGS) (Mem. Op.) (Sept. 24, 2003) (plaintiff seeking prison tape recordings failed to articulate a public interest and Court held that plaintiff's showing  is insufficient when  "[t]he only member of the public who would benefit from the release of the recorded call is plaintiff himself.").

Releasing the information described above would constitute an unwarranted invasion of privacy.  Further, in each instance, it was determined that there was no public interest in the release of the information.  Fields Dec. at ¶ 13.  A prisoner's personal interest in the information, such as to challenge his conviction is not a FOIA-recognized interest that should be weighed against the individual's privacy interest.  Thus, Customs reasoned that there was no public interest which would counterbalance or outweigh the privacy interests of third party individuals.  Indeed, the plaintiff has provided no facts to show any public interest in the disclosure of these individuals' identities or the content of their conversations.  *See National Archives and Records Admin. v. Favish* , 541 U.S. 157, 172 (2004)("Where the privacy concerns addressed by Exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure.")

Thus, Customs properly reasoned that there was no public interest which would counterbalance or outweigh the privacy interests of these third party individuals.

**Exemption 7(D)**

Exemption 7(D), exempts from disclosure material that:

> could reasonably be expected to disclose the identity of a
> confidential source including a State, local or foreign agency or
> authority or any private institution which furnished information on a
> confidential basis, and, in the case of a record or information
> compiled by a criminal law enforcement authority in the course of a
> criminal investigation, or by an agency conducting a lawful national
> security intelligence investigation, information furnished by a
> confidential source.

5 U.S.C. §552 (b)(7)(D).  Exemption 7(D) recognizes that information furnished by third parties

cooperating with federal, state, or local law enforcement investigations is, by its very nature,

confidential.  Significantly, the statute affords protection from disclosure to all the information

furnished by third-party sources, as well as the actual identity of the cooperating individual, if

there has been an explicit assurance of confidentiality, or circumstances exist from which such an

assurance could reasonably be inferred.  *U.S. Dept. of Justice v. Landano*, 508 U.S. 165 (1993).

This exemption recognizes the distinct likelihood that the identity of a source may often be

determined from an analysis of the information furnished by the source himself.  Indeed, this

becomes more inevitable when the analysis is made by a person familiar with the facts and

circumstances on which the investigation was predicated.  Thus, to disclose the identity of a

cooperating individual under such circumstances could be more than an unwarranted invasion of

his privacy; it would breach the confidentiality under which he cooperated.

The *Landano* Court acknowledged that "[t]here may . . . be . . . generic circumstances in

which an implied assurance of confidentiality fairly can be inferred."  *Landano*, 508 U.S. at 181.

The Court should take into consideration the informant's relation to the crime and the character

of the crime for which information has been provided in determining implied grants of

confidentiality.  Since *Landano*, courts have identified various crimes which warrant an implied

assurance of confidentiality.  In *Mays v. Drug Enforcement Administration*, 234 F.3d 1324 (D.C.

Cir. 2000), the Court of Appeals for this Circuit held that the crime of trafficking in cocaine is

inherently so dangerous that individuals supplying information about such crimes generally

should be entitled to an implied grant of confidentiality.

In the instant matter, plaintiff's offense involved the smuggling of controlled substances.

The Agency also has learned through investigation and intelligence information obtained by itself

and other law enforcement agencies that many violators responsible for smuggling operations use

physical and other retribution against individuals who have supplied, or are believed to have

supplied, information or cooperation to law enforcement, including murder and attempts to

murder such individuals or persons close to them.  Many of the individuals who cooperate with

the Agency have family in foreign countries, or will return to foreign countries, where the Agency

can offer no protection services by the United States.  Thus, there is an implied grant of

confidentiality, i.e. that their identities and cooperation will not be disclosed unless required in a

judicial proceeding.

### Exemption 7(E)

Exemption 7(E) of the FOIA provides protection for all information compiled for law

enforcement purposes when release "would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

The first clause of Exemption 7(E) affords "categorical" protection for "techniques and

procedures" used in law enforcement investigations or prosecutions.  *Smith v. Bureau of Alcohol,*

*Tobacco and Firearms*, 977 F. Supp. 496, 501 (D.D.C. 1997) *(citing Fisher v. U.S. Dept. of Justice*, 772 F. Supp. 7, 12 n. 9 (D.D.C. 1991), *aff'd*, 968 F.2d 92 (D.C. Cir. 1992)).  While Exemption 7(E)'s protection is generally limited to techniques or procedures that are not well known to the public, even commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.  *See, e.g., Coleman v. FBI*, 13 F. Supp. 2d. 75, 83 (D.D.C. 1998) (applying 7(E) to behavioral science analysis and details of polygraph examination); *Perrone v. FBI*, 908 F. Supp. 24, 28 (D.D.C. 1995) (applying 7(E) to type of polygraph test, type of machine used, and polygraph questions and sequence).  In justifying the application of Exemption 7(E), the agency may describe the general nature of the technique while withholding the full details.  *See e.g. Bowen v. FDA*, 925 F.2d 1225, 1228 (9th Cir. 1991).  The agency is not, however, required to describe secret law enforcement techniques, even in general terms, if the description would disclose the very information sought to be withheld.  *Coleman*, 13 F. Supp. 2d at 83; *Smith*, 977 F. Supp. at 501.

Exemption 7(E)'s second clause separately protects "guidelines for law enforcement investigations or prosecutions if [their] disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).  Accordingly, this clause of the Exemption protects any "law enforcement guideline" that pertains to the prosecution or investigative stage of a law enforcement matter whenever its disclosure "could reasonably be expected to risk circumvention of the law.*"  See, e.g., PHE, Inc. v. U.S. Dept. of Justice*, 983 F.2d 248, 251 (D.C. Cir. 1993) ("release of FBI guidelines as to what sources of information are available to its agents might encourage violators to tamper with those sources of information and thus inhibit investigative efforts"); *Jimenez v. FBI*, 938 F. Supp. 21, 30 (D.D.C. 1996) (applying 7(E) to gang-validation criteria used by Bureau of Prisons to determine whether individual is gang member).

This exemption was used to protect a specific technique used to observe criminals in the commission of a criminal act and the specific law enforcement techniques used to further the investigation.   The disclosure of the observation technique would reveal technical capacity of the agency not generally known to the public, and can be expected to aid violators in trying to detect and avoid being observed through this technique.  The disclosure of the specific law enforcement techniques used to further the investigation would reveal information pertaining to the retrieval of information about calls and messages not generally know to the public.  Disclosure of this information can be expected to aid violators in developing methods and procedures to avoid detection by the retrieval of such information.  Thus, disclosure of these techniques can reasonably be expected to risk circumvention of the law.  Fields Dec. at ¶ 19.

**Exemption 7(F)**

Exemption 7(F) protects from mandatory disclosure information compiled for law enforcement purposes if disclosure could reasonably be expected to endanger the life or physical safety of any individual.  5 U.S.C. § 552(b)(7)(F).  Courts have consistently upheld the application of this exemption to protect information identifying law enforcement officers and special agents, who are especially likely to be in contact with violent suspects.  *Maroscia v. Levi*, 569 F.2d 1000, 1002 (7th Cir. 1977); *Albuquerque Publ'g Co.*, 726 F. Supp. 851, 858 (D.D.C. 1989); *Docal v. Bennsinger*, 543 F. Supp. 38, 48 (M.D. Pa. 1981); *Nunez v. DEA*, 497 F. Supp. 209, 212 (S.D.N.Y. 1980).

In conjunction with its treatment of the responsive documents under Exemption 7(C), Customs also applied Exemption 7(F).   Fields Dec. at ¶¶ 20-23.  It has been the experience of Customs that the release of the identities of law enforcement personnel and other third party individuals who might be believed to have assisted the government due to the inclusion of their

names in investigative files, has in the past resulted in physical attacks, threats, harassment and attempted murder. *Id*. Customs believes that the release of these third parties identities could make them targets of abuse. *Id*. Therefore, Exemption 7(f) also was properly applied.

Although this exemption applies to information that is also subject to the protection of Exemption 7(C), *supra*, there is no balancing required for the use of Exemption 7(F). In any event, it is difficult to imagine any public interest that could outweigh the safety of an individual.

### Segregability

The Court of Appeals for the District of Columbia Circuit has held that a District Court considering a FOIA action has "an affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pacific Policing Agreement v. United States Customs Service*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The FOIA requires that, if a record contains information that is exempt from disclosure, any "reasonably segregable" information must be disclosed after deletion of the exempt information unless the non-exempt portions are "inextricably intertwined with exempt portions." 5 U.S.C. § 552(b); *Mead Data Cent., Inc. v. United States Dept. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).

In order to demonstrate that all reasonably segregable material has been released, the agency must provide a "detailed justification" rather than "conclusory statements." *Mead Data*, 566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification" that the exempt material would effectively be disclosed. *Id*. All that is required is that the government show "with 'reasonable specificity'" why a document cannot be further segregated. *Armstrong v. Executive Office of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no

information content." *Mead Data*, 566 F.2d at 261, n.55.

In this case, each of the documents described in the Vaughn Index was reviewed for segerability. Fields Dec. at § 24.   Eight pages were released in whole and 41 pages were released in part.  Two hundred thirty-eight (238) pages could not reasonably be segregated.  As is described in the Vaughn Index, many of the documents were withheld in whole because their contents disclosed the identities of third parties and confidential sources and information obtained from confidential sources.  Other documents were conversations of third party individuals.  Other documents contained only names, telephone numbers and addresses of third parties.  Some documents, without the exempted information were meaningless.  For example telephone bills, call information, receipts of third parties: when the identifiers for the third parties and all telephone numbers and or addresses are deleted, the documents are meaningless, having no informational content.  Forms such as search warrant application and affidavit, inventory, reports of investigation: when the exempted information was deleted there was no informational content, or the non exempt portions are inextricably intertwined with exempt portions.

Accordingly, all information withheld is exempt from disclosure pursuant to a FOIA exemption, and the documents were properly segregated.

## CONCLUSION

For the reasons stated herein, plaintiff cannot establish any violation of the Freedom of

Information Act concerning the processing of the  Customs documents and summary judgment

should be entered for EOUSA.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN, D.C. BAR # 451058
United States Attorney


_____

RUDOLPH  CONTRERAS, D.C. Bar No.  434122
Assistant United States Attorney


_____

RHONDA C. FIELDS
Assistant United States Attorney
Civil Division
555 Fourth Street, N.W.
Washington, D.C.  20530
202/514/6970

23

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on this 19th day of May, 2006 a copy of the foregoing Motion for Summary Judgment Concerning DEA Documents was mailed first class postage prepaid  to the defendant pro se

Manuel A. Geronimo
R22893-038
MCI Devens
PO Box 879
Ayer, MA 01432.


                                    _____
                                    Rhonda C. Fields
                                    Assistant United States Attorney