UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Manuel Geronimo )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>U.S. Department of Justice )<br>)<br>Defendant )<br>_____) | Civil Action No: 1:05-cv-01057 (JDB) |

**DECLARATION OF MARSHALL H. FIELDS JR.**

I. INTRODUCTION

1. I, Marshall H. Fields, Jr., make the following statement, under penalty of perjury, pertinent to the above styled and numbered cause, and being over 18 years of age, am fully competent to make the statements contained in this declaration.

2. I am the Chief of the Freedom of Information Act/Privacy Act (FOIA/PA) Section, Information Disclosure Unit (IDU), Mission Support Division, Office of Investigations, GS-14, for U.S. Immigration and Customs Enforcement (ICE) within the Department of Homeland Security (DHS). I have held this position since July 2004. My office is located at 425 I Street, NW, Washington DC.

3. Among other things, the official duties and responsibilities of my position include the general management, oversight, and supervision of the FOIA/PA Section in the Information Disclosure Unit. The FOIA/PA Section processes the FOIA/PA requests received throughout ICE Headquarters (HQ) and has oversight of the FOIA functions in the various ICE field offices.

4.     Effective March 1, 2003, the United States Customs Service (USCS) (formerly an agency component of the United States Department of Treasury) became part of DHS.  Functions previously performed by USCS transferred to two components of DHS: U.S. Customs and Border Protection (CBP), which has primary inspection responsibility at U.S. airports, seaports, and land border crossings; and ICE, which has primary investigative jurisdiction in the enforcement of immigration and customs laws.

5.     On January 18, 2006, the United States Department of Justice, Executive Office for United States Attorneys (EOUSA) referred plaintiff's FOIA request to this office together with 669 pages of records it deemed to be potentially responsive to plaintiff's request.

6.     The EOUSA referred plaintiff's request and the attached records to our office for our review, determination of disclosure and direct response to the plaintiff.  After our review of the 669 referred pages, ICE determined that forty-nine (49) pages would be released to plaintiff with redactions made pursuant to exemptions (b)(2), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F) of the FOIA.  Two hundred and thirty-eight (238) pages were withheld in their entirety pursuant to exemptions (b)(2), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F) of the FOIA.  One hundred and thirty pages (130) pages were determined to be non-responsive to plaintiff's request because they did not pertain to the investigation of plaintiff or the criminal case entitled *U.S. v. Manuel Geronimo* #1:00Cr10013-001.

7.     The remaining two hundred and fifty-four (254) pages were determined to be duplicates of the documents mentioned above.  The release determination for all responsive documents is annotated in the attached Vaughn Index.

8.     ICE forwarded the releasable forty-nine (49) pages to plaintiff as enclosures to a response letter dated May 5, 2006.

## II. FREEDOM OF INFORMATION ACT EXEMPTIONS

9.  <u>Exemption (b)(6) - 5 U.S.C. 552(b)(6)</u>: ICE asserted this FOIA exemption with respect to the names of non-law enforcement personnel and law enforcement personnel that appear in the records. The disclosure of this information would constitute a clearly unwarranted invasion of personal privacy. Such disclosure could result in unwanted publicity, attention, or harassment. Since the privacy interests belong to the individuals and not this agency, this information was withheld. There is no demonstrable public interest in the disclosure of the names of these individuals nor would such disclosure contribute to an understanding of ICE's performance of its statutory duties.

10. <u>Exemption (b)(7) – Threshold</u>: To successfully defend the assertion of any (b)(7) exemption as basis for withholding records and information, an agency must first demonstrate that the matters so withheld were compiled for law enforcement purposes. The documents for which FOIA exemption (b)(7) has been asserted in the instant matter satisfy this threshold requirement. Prior to the formation of ICE, the USCS was the agency that had primary investigative jurisdiction in the enforcement of U.S. customs laws. Its jurisdiction included the investigation of incidences involving the illegal importation of controlled substances, dangerous drugs and precursor chemicals and the violators who operate at international levels; the seizure and forfeiture of assets derived from, traceable to, or intended to be used for illicit drug importation in violation of Federal criminal law, i.e., 21 U.S.C. 841 *et seq*. The Agency cooperated with counterpart agencies within the United States and abroad and exchanged information in support of drug traffic prevention and control. Therefore, the threshold requirement for sustaining the withholding of documents pursuant to FOIA exemption (b)(7) is satisfied.

11.     <u>Exemption (b)(7)(C) – 5 USC § 552(b)(7)(C)</u>:  Exemption (b)(7)(C) has been applied to protect from disclosure information compiled for law enforcement purposes that, if released to the public, could constitute an unwarranted invasion of personal privacy.  The pages on which this exemption was applied contain the name or initials of Special Agents or the names, initials, telephone numbers and other identifying information of third parties, some of whom provided information or other cooperation to the United States.  Releasing their identities and information pertaining to these individuals would place them in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.  The records also contain the names of third parties investigated by the Agency.

12.     In making the determination to withhold this information, the individuals' privacy interests were balanced against any discernible public interest in disclosure of the individuals' identities.  In this instance, the plaintiff provided no facts to show any public interest for which any potential public interest would outweigh the privacy interests of the individuals.  Thus, disclosure of the identities would be an unwarranted invasion of their personal privacy.

13.     In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name or other identifying information appeared in the documents at issue.  The public interest in disclosure of this information was determined by whether the information in question would inform the plaintiff or the general public about the Agency's performance of its mission to enforce Federal criminal statutes, and/or how the Agency conducts its internal operations and investigations.  In this case, it was determined that there was no legitimate public interest in the third party conversations, names and other identifying information withheld under exemptions (b)(6) and (b)(7)(C), and

release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

14. The Agency's Special Agents and government employees were assigned to handle tasks relating to the official investigation into the criminal activities of third parties. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of government agents and employees.

15. The identities of government employees were withheld. Releasing their identities and information pertaining to these individuals would place them in such a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in a criminal law enforcement investigatory file.

16. The identities of third parties were withheld. Third parties who were the subject of investigation or who provided information or other cooperation to the government could be humiliated by being identified in connection with a criminal investigation; they could become targets of harassment or physical danger. Also release of their identities would constitute an unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of third parties.

17. Transcripts of tape-recorded conversations of third parties were withheld. The tapes could not be redacted because the content of the messages tends to identify the third parties.

18. <u>Exemption (b)(7)(D) – 5 U.S.C. § 552(b)(7)(D)</u>: ICE withheld law enforcement information pursuant to FOIA exemption (b)(7)(D), but only to the extent that the production of such information could reasonably be expected to disclose the identities of and information

provided by confidential sources. The activity for which plaintiff was investigated and prosecuted was the smuggling of controlled substances. It has been the experience of the Agency that many individuals involved in smuggling are members of organizations, which are armed and have violent tendencies. With respect the information provided by the confidential sources in the instant case, detailed separate specific events and circumstances are so unique to these informants that Plaintiff might be able to deduce the identities of the informants solely through the process of elimination. Any disclosure of confidential informants' identities could gravely jeopardize their physical safety, and could have a profound chilling effect on the willingness of others to assist law enforcement in a similar manner. A confidential source imparts sensitive information, often otherwise unavailable, regarding violations of law with the expectation that his or her identity will be protected by the recipient law enforcement agency. Maintaining the confidentiality of informants' identities ensures the Agency's ability to obtain information in a similar fashion in future investigations since other potential witnesses, free from the fear of exposure and confident that the Agency will protect their identities, will be encouraged to cooperate in the administration of justice. Since information was obtained from witnesses by a criminal law enforcement agency, in the course of a criminal investigation within the agency's jurisdiction, under circumstances from which confidentiality could be inferred, the identities of and information provided by these sources are entitled to the protection of FOIA exemption (b)(7)(D). The Agency also has learned through investigation and intelligence information obtained by itself and other law enforcement agencies that many violators responsible for smuggling operations use physical and other retribution against individuals who have supplied, or are believed to have supplied, information or cooperation to law enforcement, including murder and attempts to murder such individuals or persons close to them. Many of the

individuals who cooperate with the Agency have family in foreign countries, or will return to foreign countries, where the Agency can offer no protection services by the United States. Thus, there is an implied grant of confidentiality, i.e. that their identities and cooperation will not be disclosed unless required in a judicial proceeding.

19.    Exemption (b)(7)(E) – 5 U.S.C. § 552(b)(7)(E): This exemption was asserted to protect all information compiled for law enforcement purposes when release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." This exemption was used to protect a specific technique used to observe criminals in the commission of a criminal act and the specific law enforcement techniques used to further the investigation. The disclosure of the observation technique would reveal technical capacity of the agency not generally known to the public, and can be expected to aid violators in trying to detect and avoid being observed through this technique. The disclosure of the specific law enforcement techniques used to further the investigation would reveal information pertaining to the retrieval of information about calls and messages not generally know to the public. Disclosure of this information can be expected to aid violators in developing methods and procedures to avoid detection by the retrieval of such information. Thus, disclosure of these techniques can reasonably be expected to risk circumvention of the law.

20.    Exemption (b)(7)(F) – 5 U.S.C. § 552(b)(7)(F): This exemption was asserted to protect law enforcement information the disclosure of which could reasonably be expected to endanger the life or physical safety of any individual. Special Agents and Supervisory Special Agents, as well as members of other law enforcement entities, are frequently called upon to conduct a wide

variety of investigations, including sensitive and dangerous undercover operations. Special Agents routinely approach and associate with violators in a covert capacity. Many of those violators are armed and many have known violent tendencies.

21.     Third parties identified in criminal investigative files often have provided information or other assistance to the government or may be suspected of having rendered such cooperation by virtue of having been identified in relation to a criminal investigation.

22.     It has been the experience of the Agency that the release of the identity of Special Agents, law enforcement personnel, and other third party individuals in matters falling under the investigative responsibilities of the Agency, has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other Special Agents and other third party individuals. It is anticipated that these individuals would become targets of abuse if they were identified as, or were believed to have been, participants in enforcement operations.

23.     In addition, if the names of law enforcement personnel and other third party individuals were released, pursuant to the FOIA, the Agency would be releasing this data to the public realm. The Agency considers it to be within the public interest not to disclose the identities of Special Agents so that they may effectively pursue their undercover and investigatory assignments. These assignments are a necessary element in support of the Agency's objective -- the suppression of the illegal importation of controlled substances and other illegal matter into the United States. It also is not in the public interest to release the identities of individuals providing information or other assistance to the government because release of such information would make others hesitant to render information or assistance in the future. Public disclosure of the identities of investigatory personnel and other third party individuals would have a

detrimental effect on the successful operation of the Agency as well as the harassment and danger to them. This information was also withheld pursuant to Exemption (b)(7)(C).

### III. SEGERABILITY

24. I have reviewed each of the documents described in the Vaughn Index for segerability. Eight pages were released in whole and 41 pages were released in part. Two hundred thirty-eight (238) pages could not reasonably be segregated. As is described in the Vaughn Index, many of the documents were withheld in whole because their contents disclosed the identities of third parties and confidential sources and information obtained from confidential sources. Other documents were conversations of third party individuals. Other documents contained only names, telephone numbers and addresses of third parties. Some documents, without the exempted information were meaningless. For example telephone bills, call information, receipts of a third parties: when the identifiers for the third parties and all telephone numbers and or addresses are deleted, the documents are meaningless, having no informational content. Forms such as search warrant application and affidavit, inventory, reports of investigation: when the exempted information was deleted there was no informational content, or the non-exempt portions are inextricably intertwined with exempt portions.

### IV. JURAT CLAUSE

I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief. Signed this 19th day of May, 2006.

MARSHALL H. FIELDS, JR.
Chief, FOIA/PA Section
Information Disclosure Unit
Mission Support Division
U. S. Immigration and Customs Enforcement
United States Department of Homeland Security

Attachment